OPINION OF THE COURT
Gabriel M. Krausman, J.
Plaintiff initiated this action to recover damages for injuries sustained as a result of an automobile accident. Defendant conceded liability and a nonjury trial was held to determine if plaintiff came within the 90 out of the first 180-day provision of subdivision 4 of section 671 of the New York Insurance Law. If the no-fault threshold was met, reasonable compensation for the injury was to be determined.
This is a factually uncomplicated case. On July 3, 1981, plaintiff, Katy Stossel, was struck on her foot by defendant’s vehicle. She was taken to the emergency room at Methodist Hospital, X rays were taken and no fracture was found. Mrs. Stossel’s ankle was wrapped in tape, she was issued crutches and sent home.
Two days after the accident plaintiff contacted the Human Development Association (HDA) and requested that they furnish her with the services of the homemaker who had previously been assigned to help care for her husband.[1] *455 After reviewing her application HDA authorized a homemaker, on an emergency basis, for 4 hours per day, 7 days a week for a total of 28 hours. Service commenced on or about July 10, 1981, and the attendant worked in plaintiff’s home between the hours of 3:00 a.m. to 1:00 p.m. Once a month a registered nurse visited Mrs. Stossel, examined her and submitted a report of the findings to HDA. Based on the reports HDA agreed to extend the home care, on a monthly basis, until November 27, 1981, when the home care was terminated.
The No-Fault Law provides that an individual injured in an accident may sue to recover for noneconomic loss, i.e., pain and suffering, if the claimant sustained a “serious injury”. (Insurance Law, § 673, subd 1.) Subdivision 4 of section 671 of the Insurance Law, amended in 1977, provides a purely verbal definition of the “serious injury” threshold. The Legislature abandoned the monetary definition of serious injury in favor of the purely verbal threshold in order to prevent easy circumvention of the statutory requirements and thereby “reduce the * * * [volume] of automobile personal injury accident cases litigated in the courts”. (Memorandum of State Executive Dept, McKinney’s Session Laws of NY, 1977, pp 2448, 2450; Licari v Elliott, 57 NY2d 230.) Accordingly, the statute must be strictly construed and claims must be carefully scrutinized to prevent the litigation of specious claims.
Under the definitional portion of subdivision 4 of section 671 applicable in this case an action may be brought to recover noneconomic loss if it can be established that: (a) there was a medically determined injury, (b) the impairment prevented the injured person from performing substantially all of the material acts of the person’s customary daily activities, and (c) the incapacity lasted for at least 90 out of the first 180 days immediately following the injury.[2] To be “medically determined” pursuant to the statute it is *456 not sufficient that a competent medical authority find that an injury was sustained. It must be “medically determined” that the pain and suffering for which compensation is sought was caused by the injury. (Licari v Elliott, supra; Hezekiah v Williams, 81 AD2d 261, 264-265.) Plaintiff has failed to meet this burden.
The only substantiation of plaintiff’s claim is her own diagnosis and prognosis that the injury caused her incapacitation. During the course of her alleged incapacitation plaintiff sought treatment from licensed medical doctors twice. Once, immediately following the accident at the Methodist Hospital emergency room. A second time in November, 1981, when she visited Dr. Schiowitz after a friend advised her that it would be in her best interests to see a doctor. Plaintiff has failed to produce any evidence from the treating physicians that the injury she sustained was anything more than a soft tissue injury to her right foot. There is no medical evidence as to the severity and possible debilitating effect of the injury. The registered nurses who visited and examined plaintiff during the months of July, August, September and October of 1981, to determine if home care service should be extended, made no finding that her condition was caused by the injury. Simply stated, there is no competent medical evidence that the soft tissue injury caused Katy Stossel’s condition.
At trial plaintiff testified that prior to the accident, among her numerous ailments, she was afflicted with varicose veins, phlebitis and obesity. It is entirely possible and plausible that her condition was not the result of the soft tissue injury to her right ankle, but is attributable to any one of her many infirmities. Without competent medical testimony as to whether the injury itself incapacitated or aggravated any of her prior existing conditions, this court cannot, on its own, make such a finding. Therefore, as a matter of law and fact, this court finds that plaintiff has failed to bear her burden of proving that there was a medically determined injury for which she is entitled to compensation.
*457 Similarly, plaintiff has failed to satisfy the requisites for the other pertinent aspects of the statutory definition of “serious injury”. Plaintiff testified that in 1979, prior to her accident, she quit work to be home and care for her husband. Unable to perform the task alone, she requested and was given assistance in the form of a homemaker furnished by HDA. Mrs. Stossel and the attendant divided the housekeeping work, cooking, cleaning, marketing and laundry so that Mrs. Stossel would have time to rest and help care for her husband. At trial plaintiff stated that subsequent to the accident, she was unable to care for herself and that her customary and daily activities were circumscribed in a material way. Based on the evidence this court reaches an opposite conclusion.
On July 7, 1981, four days after the accident, plaintiff’s husband was admitted to a nursing home. While Sandor Stossel was in the home, Mrs. Stossel testified and the HDA records, introduced into evidence by plaintiff, show that on numerous occasions Mrs. Stossel left her house to visit her husband. In fact at one point, almost two months after the injury, Mrs. Stossel contacted HDA and informed them that because she was visiting her husband during the day she no longer required the attendant. Her daughter subsequently requested that HDA not cancel the homemaker service. Furthermore, approximately one month after the accident Mrs. Stossel helped pack and move from her premises to a new apartment.
There is no doubt that Mrs. Stossel experienced discomfort and difficulty walking. But, based on all the evidence, this court cannot accept as credible that portion which states that plaintiff was confined to bed and unable to care for herself. Clearly, she was able to get around and tend to her affairs. That plaintiff, of her own volition, chose to stay confined to bed at particular times and not tend to certain matters does not cause the injury to fall within the statutory definition of serious. Even if plaintiff’s problems could be traced to the injury, her testimony as to her daily activities supports the conclusion that she was able to, if she was so disposed, perform a substantial portion of the customary daily activities she performed prior to the injury.
*458 Similarly, based on the credible testimony concerning plaintiff’s daily activities, as set out above, this court finds that Mrs. Stossel was not prevented from performing all of the material acts which constituted her daily activities for 90 out of the first 180 days immediately following the injury.
Accordingly, it is the finding of this court that plaintiff has not sustained a serious injury under the statutory definition of subdivision 4 of section 671 of the Insurance Law, and her cause of action must be dismissed.

. Prior to the accident of July 3, 1981, HDA had authorized and provided a home attendant to help care for Mrs. Stossel’s ailing husband, Sandor. The home attendant *455 was assigned to the Sandor Stossel case in 1979, and the authorization for care was extended until July 7, 198Í, when Mr. Stossel was placed in a nursing home. A home attendant was also assigned to Mr. Stossel for a few months during 1972 and 1977.

. Subdivision 4 of section 671 of the Insurance Law defines in pertinent part “serious injury” as: “[A] medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the *456 material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.”