■ KENNETH KIMBALL et al., as Parents and Natural Guardians of TRACEY KIMBALL, an Infant, Plaintiffs, v DONALD J. BAKER et al., Defendants. (Action No. 1.) HELEN McKAY, Respondent, v BIL-RAC TRANSPORT SYSTEMS et al., Appellants, et al., Defendants. (Action No. 2.) (And Six Other Related Actions.)—Harvey, J. Appeal (in action No. 2) from an order of the Supreme Court (Ingraham, J.), entered March 16, 1990 in Cortland County, which denied certain defendants' motions for summary judgment dismissing the complaint against them.

Plaintiff Helen McKay (hereinafter plaintiff) was the driver of one of several vehicles involved in a multicar accident on December 21, 1985 on Interstate Route 81 in Cortland County. Initially, plaintiff's vehicle was struck from behind and she pulled over to the right side of the road to inspect the damage. She then got back into her car and put on her seatbelt. Before she could resume driving her vehicle, however, she was again struck from behind. At that time plaintiff felt a little "hazy" and her head might have hit the inside of her car, but she said she was not seriously hurt. Plaintiff was taken to the hospital and was released that day with a diagnosis that she was suffering from a mild neck strain. Three days later her neck still hurt and she was again examined and diagnosed as having a strained neck muscle. She was given a soft collar to wear for comfort and was released.

When she returned home to Canada, plaintiff began seeing her family physicians. At an examination of plaintiff on January 10, 1986, Dr. E. A. Manderville noted that plaintiff had a good range of motion in her neck and she apparently had only "mild pain on the extremes of movement". Any lower back pain relating to the accident had apparently cleared up by that time. Manderville noted some tenderness in the neck muscles and prescribed physiotherapy for plaintiff. When Manderville examined plaintiff again on January 24, 1986, he again noted that plaintiff had a good range of movement. Manderville stated that he nonetheless told plaintiff not to return to her job as a cook at that time because of "the nature of her work". When Manderville examined plaintiff on February 4, 1986 this was apparently to treat plaintiff for a lower back strain she suffered "sweeping snow off the windshield of her car". On February 26, 1986, an examination of plaintiff again revealed a good range of movement although

"[s]he complained of pain in her neck". Apparently plaintiff was also examined on occasion at this time by Manderville's partner, Dr. A. C. Goddard-Hill, but no details of these examinations appear in the record and it is unclear whether all or some of them were related to problems stemming from the accident. Plaintiff's own affidavits and examination before trial testimony indicated that, although she did not return to work until July 1986, she was never confined to her bed as a result of the accident and was able to dress herself, perform light housekeeping duties and shop for groceries. When her car was fixed in March 1986, plaintiff stated that she was able to drive it.

In December 1987, plaintiff commenced this suit (action No. 2) against various defendants seeking damages for her injuries, as did several of the other individuals involved in the multicar collision that day. Plaintiff is named as defendant in some of these suits. Following joinder of issue, several of the defendants in the action brought by plaintiff moved for summary judgment against plaintiff, alleging that she had not established that she suffered a "serious injury" pursuant to Insurance Law § 5102 (d). Supreme Court denied these motions and this appeal followed.

There must be a reversal. Inasmuch as plaintiff's physician states (and plaintiff concedes in her bill of particulars) that none of her injuries from her automobile accident were permanent in nature, she apparently premises her claims of "serious injury" under Insurance Law § 5102 (d) on the two categories in the statute describing a "significant limitation of use of a body function or system" and a "medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment". In our view, plaintiff's proof falls far short of establishing a prima facie showing of either of these claims.

With respect to plaintiff's claim of "significant limitation", we note that a finding that an injury is "significant" requires something more than a minor limitation of use (see, Gaddy v Eyler, 167 AD2d 67). This court has repeatedly emphasized that subjective complaints of pain unsupported by credible or objective medical evidence or documentation is simply not enough to establish the threshold issue of serious injury (see, e.g., supra; Rivera v Pula, 173 AD2d 1000; Leschen v Kollarits,

144 AD2d 122; *see also, Scheer v Koubek,* 70 NY2d 678, 679). Here, the medical evidence submitted by plaintiff from her treating physicians does no more than describe minor limitations of use combined with plaintiff's continuing subjective complaints and symptoms of pain. Nowhere does the evidence suggest that plaintiff tested positive for an objective medical problem.

As for plaintiff's claim that she was substantially unable to perform her normal activities for at least 90 of the 180 days following the accident, we note that, although plaintiff's physician apparently did tell her to stay home from work, it cannot be determined from plaintiff's proof whether that direction was given in response to an objective medical problem or was made simply in response to plaintiff's complaints of pain. Moreover, because plaintiff also apparently suffered an unrelated back injury of unspecified seriousness in February 1986, it is unclear how closely related her absence from work was to this problem. It was incumbent upon plaintiff to present medical evidence that her injuries from the automobile accident were the cause of her disability over the applicable period *(see, Licari v Elliott,* 57 NY2d 230, 238; *see also, Costa v Billingsley,* 127 AD2d 990, 991). In any event, it is apparent from plaintiff's own affidavits and testimony that, despite the fact her discomfort was annoying and apparently kept her from such activities as lifting her grandchildren and snowmobiling, she was not precluded from "substantially all" of her normal activities following the accident (Insurance Law § 5102 [d]). As the Court of Appeals has noted, the "substantially all" standard requires a showing that the plaintiff's activities have been restricted "to a great extent rather than some slight curtailment" *(Licari v Elliott, supra,* at 236; *see also, Thomas v Drake,* 145 AD2d 687, 688; *Gootz v Kelly,* 140 AD2d 874, 875-876). Inasmuch as plaintiff's proof raised no triable questions on this issue, dismissal of the action is required.

Mahoney, P. J., Weiss, Levine and Mercure, JJ., concur. Ordered that the order is reversed, on the law, with costs, motions granted and complaint in action No. 2 dismissed.