■ DUDLEY B. SHORT et al., Respondents-Appellants, v LAWRENCE SHAWN et al., Appellants-Respondents.—Harvey, J. Cross appeals from an order of the Supreme Court (Rose, J.), entered September 26, 1991 in Broome County, which denied defendants' motion for summary judgment dismissing the complaint and plaintiffs' cross motion for summary judgment.

On August 18, 1989, plaintiff Virginia E. Short (hereinafter plaintiff) was driving her car in the City of Binghamton, Broome County. At approximately 2:36 P.M., while plaintiff was stopped at a red light, her car was hit from behind by a van driven by defendant Lawrence Shawn. Shortly thereafter, plaintiff was treated at the emergency room of a nearby hospital where she was examined for neck and lower back injuries. No major injuries were found and plaintiff was released without X rays being taken.

In the days following the accident, plaintiff avers that she suffered from headaches, blurred vision, stiffness and soreness at the back of her neck, shoulders and wrists, aching in her wrists, arms and right ankle, and numbness in both hands. As a result, 11 days after the accident plaintiff consulted orthopedic surgeon Robert Milgram, who took X rays and diagnosed plaintiff as suffering from "post cervical strain syndrome". He

noted at that time that plaintiff had "generally a very good range of motion" in her neck and would be "best served by staying active". Upon examining plaintiff in October 1989, Milgram noted that plaintiff was still complaining of stiffness and soreness in her back and neck and numbness in her hands; however, he described her symptoms as "mild to moderate" and encouraged her to seek light employment. At one point Milgram did perform surgery on plaintiff's right wrist to relieve a condition of carpal tunnel syndrome that he averred was related to the accident.

Plaintiff and her husband commenced this action seeking recovery for plaintiff's personal injuries and for the husband's derivative damages. Plaintiff alleged that, during the six months to one year following the accident, her various symptoms prevented her from performing her usual household duties. Additionally, she alleges that she was prevented from enjoying her usual recreational activities of driving her car, fly-casting and riding a motorcycle.[1] Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint on the ground that plaintiff allegedly did not suffer a "serious injury" as defined in Insurance Law § 5102 (d). In support of this motion, defendants submitted, *inter alia,* an affidavit and medical report from an orthopedic surgeon, Marie Hatam, who examined plaintiff on defendants' behalf. Hatam found no evidence of conditions qualifying as "serious injuries" under the Insurance Law. Plaintiffs opposed the motion and cross-moved for summary judgment seeking a stipulation that plaintiff sustained a "serious injury" as a matter of law. Supreme Court denied plaintiffs' cross motion in its entirety. With respect to defendants' motion, the court ruled that plaintiffs had failed to make a prima facie showing of a "serious injury" as that term is defined in the first clause of Insurance Law § 5102 (d) but had succeeded in making a prima facie claim under the second clause of the statute. These cross appeals ensued.

Initially, we agree with Supreme Court that plaintiff failed to sufficiently support her claim that the accident caused her to suffer a "significant limitation" of a body function as that term is employed in the first clause of Insurance Law § 5102 (d). Case law has repeatedly held that the word "significant",

---

1. Plaintiff is now 49 years old, 4 feet, 11 inches in height and weighs 148 pounds. It should also be noted that plaintiff's left leg was amputated above the knee when she was 15 years old, although she claims that this fact has no effect on her mobility.

as used in this statute, must be interpreted as meaning something "more than a minor * * * mild or slight limitation of use" *(Licari v Elliot,* 57 NY2d 230, 236; *see, Gaddy v Eyler,* 167 AD2d 67, 72, *affd* 79 NY2d 955).

Here, Hatam's medical report submitted in support of defendants' motion confirmed the presence of chronic cervical strain and subjective evidence of right carpal tunnel syndrome (no objective finding). Hatam concluded that any disability experienced by plaintiff was mild and "more based on subjective complaints than objective findings". In opposition, plaintiff submitted an affidavit from herself containing only her subjective impressions regarding her condition and an affidavit from Milgram which states that plaintiff sustained a "permanent consequential limitation". Milgram's conclusion, however, appears to be based almost exclusively on plaintiff's subjective protestations of pain and its impairment of her mobility. Notably, even though Milgram indicates that plaintiff's right carpal tunnel syndrome problem might not have been successfully relieved, he admitted basing this conclusion solely on plaintiff's subjective complaints of pain. Milgram's own office notes, taken during the two years following the accident, cast further doubt on his conclusions regarding the serious nature of plaintiff's injuries. For example, on August 29, 1989, only 11 days after the accident, he noted that plaintiff "is not in acute distress" and is experiencing "mild discomfort". In October 1989, Milgram notes that plaintiff's symptoms are only "mild to moderate" and by February 1990, he writes that plaintiff can "bend and twist really quite well". He adds that plaintiff "continues to have *subjective* complaint with generally good *objective* motion and coordination" (emphasis supplied). By May 1991, Milgram described plaintiff as "comfortable and flexible * * * and I feel that she can be returned to full employment".

In light of this evidence, we must agree with Supreme Court that plaintiff failed to support her claim of "significant limitation" of a body function (Insurance Law § 5102 [d]). We disagree, however, with the court's conclusion that plaintiff made a prima facie showing pursuant to the second clause of Insurance Law § 5102 (d) that she was substantially unable to perform her normal activities for at least 90 of the 180 days following the accident. As we previously noted, the medical determination of plaintiff's injuries following the accident as supplied by Milgram appears to have been based solely on plaintiff's subjective impressions. Notably, while Milgram diligently reports plaintiff's complaints of discomfort in his medi-

cal records, he does not describe any objective evidence thereof during the first six months after the accident. Of greater significance, however, are plaintiff's contradictory accounts in the record with respect to the degree of her limitations. For example, at various points in the record plaintiff states that she was capable of doing housework and driving her car even though she was allegedly uncomfortable doing so. She was also able to be employed, working 3 to 4 weeks on a factory assembly line in December 1989. It is not until plaintiff's affidavit in opposition to defendants' summary judgment motion that she avers that she was *completely incapable* of performing these functions for the statutory period following the accident.[2] Because it therefore appears that plaintiffs' proof only establishes a "slight curtailment" of her usual activities, we must conclude that no triable questions on the point were raised and the complaint should have been dismissed in its entirety *(see, Kimball v Baker,* 174 AD2d 925, 927).

The parties' remaining arguments have been considered and rejected as meritless.

Mikoll, J. P., Levine, Mahoney and Casey, JJ., concur. Ordered that the order is modified, on the law, with costs, by reversing so much thereof as denied defendants' motion for summary judgment; motion granted, summary judgment awarded to defendants and complaint dismissed; and, as so modified, affirmed.

---

2. Interestingly, despite plaintiff's averment in her affidavit that she was entirely unable to drive her automobile because of her injuries, she states at another point in the record that she drove her car to the garage to get an estimate on the Monday following the accident.