**Joseph RIVERA, Harriet Rivera, and Wanda Rivera, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. Civ.A. 96–CIV–2074 (DGT).

United States District Court,
E.D. New York.

Jan. 29, 1998.

Moskowitz, Passman & Edelman, New York City, for plaintiffs.

Zachary W. Carter, United States Attorney, Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

At the conclusion of a bench trial which took place on October 7, 21, and 29, 1997, the court found that the defendant, the United States of America, was negligent, and that the plaintiff, Joseph Rivera, was not contributorily negligent concerning an automobile accident which occurred on January 11, 1993 in Brooklyn, New York between a car driven by agents of the Federal Bureau of Investigation and one driven by the plaintiff. The court further found that as a result of this accident, the plaintiff suffered injuries which caused him to be incapacitated for a period of at least ninety days immediately following the accident. The court awarded damages for the plaintiff in the amount of $40,000.

Defendant moves for a directed verdict on the basis that the plaintiff failed to establish a serious injury as defined by New York's no-fault insurance law and that he, therefore, is not entitled to recover for non-economic losses arising from the, accident. *See* N.Y.Ins.Law §§ 5102(d), 5104 (McKinney 1985).

At trial, the court credited the plaintiff's testimony which established that he suffered injuries to his head, neck, and back, as well as residual attention deficits and cognitive disabilities affecting his memory which were of at least temporary duration; that these impairments prevented him from performing substantially all of his customary daily activities; and that this incapacity lasted for at least ninety out of the first one hundred-eighty days immediately following the injury. The United States argues that plaintiff's injury does not meet the requirements for a "medically determined" injury within the meaning of § 5102(d) of New York's no-fault insurance statute because no objective medical evidence was presented at trial to support his claims of injuries. *See* Trial Transcript ("Tr.") of 10/29/97 at 370–389.

There appear to exist a few New York cases which seem to support the defendant's position that proof of a medically determined injury cannot rest solely on the plaintiff's subjective complaints, but rather must be supported by objective medical evidence.

See *Eldred v. Stoddard,* 217 A.D.2d 952, 953, 630 N.Y.S.2d 171, 172 (4th Dept.1995) ("The opinion of plaintiff's physician that plaintiff suffers from chronic pain syndrome is based upon plaintiff's subjective complaints of pain and is unsupported by any objective medical evidence."); *Short v. Shawn,* 188 A.D.2d 815, 817–18, 590 N.Y.S.2d 943, 945 (3d Dept.1992) ("[T]he [physician's] medical determination of plaintiff's injuries … appears to have been based solely on plaintiff's subjective impressions. … [W]hile [the physician] diligently reports plaintiff's complaints of discomfort in his medical records, he does not describe any objective evidence thereof. …"); *Lowe v. Bennett,* 122 A.D.2d 728, 730, 511 N.Y.S.2d 603, 605 (1st Dept.1986), *aff'd,* 69 N.Y.2d 700, 512 N.Y.S.2d 364, 504 N.E.2d 691 (1986) ("The conclusory allegations in [the doctor's] affirmations, based on subjective findings and plaintiffs' complaints, fail to establish a prima facie case of 'serious injury.' ").

Several New York cases, however, do not specifically require objective evidence of injury, but nonetheless affirm that to constitute a "serious injury" under § 5102(d), an injury must be supported by "competent" or "credible" medical evidence. See *Costa v. Billingsley,* 127 A.D.2d 990, 991, 512 N.Y.S.2d 947, 948 (4th Dept.1987) ("[P]laintiff's complaints are entirely subjective and are unsupported by any competent medical evidence. … The subjective complaints of the plaintiff without medical foundation are insufficient to establish a prima facie case of serious injury. …"); *Lanuto v. Constantine,* 192 A.D.2d 989, 991, 596 N.Y.S.2d 944, 945 (3d Dept. 1993) ("[P]laintiff … failed to present credible medical evidence that an injury or impairment was sustained."); *Stossel v. Fleyshmahker,* 117 Misc.2d 454, 456, 458 N.Y.S.2d 484, 456–57 (N.Y.Civ.Ct.1983) ("The only substantiation of plaintiff's claim is her own diagnosis … that the injury caused her incapacitation. … [T]here is no competent medical evidence that the … injury caused [plaintiff's] condition.").

One New York Court of Appeals case, although not specifically setting forth a requirement of objective medical evidence, would appear to indicate that the subjective complaints of a plaintiff are not sufficient to establish a serious injury under § 5102(d). In *Licari v. Elliott,* 57 N.Y.2d 230, 238–39, 455 N.Y.S.2d 570, 574, 441 N.E.2d 1088 (1982), the New York Court of Appeals stated:

[P]laintiff's subjective complaints of occasional, transitory headaches hardly fulfill the definition of serious injury. Plaintiff offered no proof that his headaches in any way incapacitated him or interfered with his ability to work or engage in activities at home. … We do not believe the subjective quality of an ordinary headache falls within the objective verbal definition of serious injury as contemplated by the No–Fault Law.

It is evident that *Licari* did not squarely address the issue of whether a serious injury must be demonstrated through objective medical evidence. Rather, the case can be fairly read as standing for a middle position that a plaintiff's subjective complaints alone, in the absence of some independent validation by a competent medical authority, however rendered, will not establish a serious injury under § 5102(d). Furthermore, the case is readily limited to its facts. The *Licari* Court seemed to rest its holding on the relatively minor nature of the effects the plaintiff claimed to have suffered as a result of the accident, noting that there existed no proof that his commonplace headaches, which by the plaintiff's own admission were relieved by aspirin, in any way interfered with his ability to work or conduct his ordinary activities at home. *See id.*

Contradicting the government's position is *D'Avolio v. Dictaphone Corp.,* 822 F.2d 5 (2d Cir.1987), a federal case interpreting New York law, which appears to hold that no objective proof of injury is required. Addressing the alternative methods of establishing a "serious injury" within the meaning of § 5102(d), the Second Circuit observed:

Plaintiff may also demonstrate a "serious injury" if she establishes that: (a) there was a medically determined injury, (b) the impairment prevented the injured person from performing substantially all of the material acts of the person's customary daily activities, and (c) the incapacity lasted for at least 90 out of the first 180 days immediately following the injury. While

defendants correctly point out that the injury suffered must. be "medically · determined" to satisfy the last category of serious injuries listed in § 5102(d), they cite no case—and we have found none—requiring that elements (b) and (c) must be shown by medical testimony or that element (a) must be proven by an expert medical witness. New York courts considering elements (b) and (c) have focused on the credibility of the plaintiff's testimony.

822 F.2d at 6 (citations omitted).

Nothing within *D'Avolio* indicates that a claim of injury must be supported by objective medical evidence in order to be "medically determined" within the meaning of § 5102(d). In fact, the opinion appears to suggest that no such requirement exists. Although the Second Circuit did not specifically define the term "medically determined," in setting forth the requirements for a serious injury under the 90/180 prong of § 5102(d), the court cited *Stossel v. Fleyshmahker*, 117 Misc.2d 454, 456, 458 N.Y.S.2d 484, 485 (1983), which stated that to be "medically determined" within the meaning of the statute, "it is not sufficient that a competent medical authority find that an injury was sustained. It must be 'medically determined' that the pain and suffering for which compensation is sought was caused by the injury." *See D'Avolio*, 822 F.2d at 6–7. Thus, under *D'Avolio*, while it would appear that proof of an existing injury, as well as its causal relationship to the accident, must be corroborated by competent medical authority, it does not appear that such corroboration must rest on *objective* medical evidence.

■ It is, therefore, apparent that state and Second Circuit case law interpreting New York's no-fault insurance statute differ somewhat regarding the criteria for a serious injury under § 5102(d) of the statute. It is well-established that where state substantive law is to be applied, a federal court is bound by the interpretation of a state's statute by the state's highest court. *See Missouri v. Hunter*, 459 U.S. 359, 366–68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974). *See also O'Neill v. City of Auburn*, 23 F.3d 685, 689 (2d Cir.1994), *cert.*

*denied*, —— U.S. ——, 117 S.Ct. 766, 136 L.Ed.2d 712 (1997); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir.1997). Additionally, where a state's court of last resort "has not ruled on the precise issue" before the federal court, the latter has the responsibility "to predict how the state's highest court would rule on [the] issue." *O'Neill*, 23 F.3d at 689–90 (citing *In Re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 850 (2d Cir. 1992)). *See also Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267 (2d Cir. 1997); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir.1997); *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994). The conjectural inquiry to be conducted by a federal court in such situations requires an examination of the state's lower court case law. *See In Re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d at 850 ("[W]here the high court has not spoken, the best indicators of how it would decide are often the decisions of lower [New York] courts.").

■ As previously mentioned, it appears that the New York Court of Appeals has not directly answered the question of whether objective medical evidence is specifically required to establish a serious injury under § 5102(d). Furthermore, it is difficult to predict with any degree of confidence how the court of appeals would rule if presented with this question. This is so for two reasons. First, as earlier noted, a fair reading of *Licari* indicates that the New York Court of Appeals adopted an intermediary position, one requiring something more than subjective complaints by the plaintiff, yet less than objective medical evidence of injury. Second, a survey of lower court cases demonstrates a certain amount of inconsistency concerning the nature of the proof required for a serious injury under New York's no-fault statute. For these reasons, this court declines to predict how the New York Court of Appeals would resolve the question of whether objective medical evidence must be presented to establish a serious injury under § 5102(d). However, inasmuch as this question lies at the very core of the government's motion for a directed verdict, the court will accept the government's contention for purposes of this analysis.

Even assuming that objective medical evidence of injury is required to demonstrate a serious injury under § 5102(d), the plaintiff's cognitive disabilities do appear to have independent, objective support in the trial testimony of Dr. Elkhonon Goldberg, a neuropsychologist who examined the plaintiff in January and February of 1993, and who testified that his evaluation of the plaintiff revealed a deficit in cognitive function which was causally related to the accident. *See* Tr. of 10/21/97 at 286, 289–290. Specifically, Dr. Goldberg testified that the plaintiff had a lateralized (right-sided) deficit in sequential motor organization, an abnormal finding that strongly indicates damage to the opposite side of the brain:

> There was impairment in the right hand and that was evidenced in several tests which we employed to measure motor function. And I say that the discrepancy was noted so that the motor functions in the right hand which is the dominant hand, exceeding those in the left hand, were weaker than in the left hand which is an abnormal finding and ... strongly indicative of damage of the opposite side of the brain.... And it is extremely inconceivable that such a lateralized abnormality would be part and parcel of one's life long make up. These lateralized abnormalities are usually significant to an acquired brain damage.

*Id.* at 290. Dr. Goldberg's testimony is significant because the point of impact during the accident was the left side of the plaintiff's head, and the diagnosis of a lateralized motor deficiency on the plaintiff's right side appears consistent with a trauma-induced injury to the left side of his brain. Dr. Goldberg further stated at trial that he made a similar finding of lateralized deficiency with respect to the plaintiff's "visual attention." The tests Dr. Goldberg conducted revealed that the plaintiff suffered from right visual hemiinattention, a finding which Dr. Goldberg stated "again points to something abnormal in the left hemisphere." *Id.* Summarizing the results of these findings, Dr. Goldberg stated:

> [W]hen you [look at] the two things, motor findings ... in the right hand and the right visual hemiinattention, that amounts to convergent evidence, several times, pointing in the same direction and indicating the same location of the brain as the culprit. This pattern indicates powerful evidence of acquired brain damage .... these ... things ... in my opinion are particularly unequivocal linking these findings with an acquired brain damage.

*Id.* Thus, it is evident that at least one of the plaintiff's injuries, the one relating to his cognitive capabilities, is independently corroborated by expert medical testimony, and that the diagnosis confirming this injury rests upon objective medical evidence, namely, diagnostic tests revealing cognitive disfunction.

The United States cites an unreported opinion, *Cooper v. United States,* No. 85–CV–370, 1987 WL 11618, at *4 (N.D.N.Y. May 13, 1987), for the proposition that a psychologist's conclusion that a patient suffered cognitive injuries attributable to an accident cannot be accepted where the patient's pre-accident mental and cognitive abilities have not been sufficiently established. The court finds this case to be inapposite. In *Cooper,* the doctor's examination presumably did not point to any compelling link between the plaintiff's loss of cognitive ability and the accident which she claimed caused this loss. This is to be contrasted with the case before the court, where Dr. Goldberg's diagnostic testing of the plaintiff revealed the existence of what he believed to be injury to the left hemisphere of the brain. The court finds Dr. Goldberg's conclusion that plaintiff's lateralized deficits in both motor skills and visual attention are attributable to a trauma-induced injury to the left side of his brain to be credible.

The medical testimony offered in support of plaintiff's other injuries, *i.e.,* those to his back and neck, does in fact appear to rest largely, if not solely, on his subjective complaints, but none of the medical findings are inconsistent with the veracity of plaintiff's testimony about these complaints. In any case, the government has cited no cases to support the contention that every claim need be corroborated by objective medical evidence and it is therefore sufficient that at least a portion of the claims be corroborated.

Furthermore, there is little doubt that the one claim that was corroborated by objective medical evidence, and thus unequivocally satisfies the criteria for a medically determined injury even under the interpretation of New York's no-fault insurance statute advanced by the government, contributed to plaintiff's inability to work for at least ninety days following his injury.

For the reasons discussed above, the court finds judgment for the plaintiff in the amount of $40,000. The clerk of the court is directed to enter judgment accordingly and close the case.