OPINION OF THE COURT
Jasen, J.
The issue raised on this appeal is whether the plaintiff in this negligence action brought to recover damages for personal injuries has established a prima facie case that he sustained a “serious injury” within the meaning of subdivision 4 of section 671 of the Insurance Law, commonly referred to as the “No-Fault” Law.
On February 13, 1979, plaintiff was injured in a motor vehicle accident. After being examined at the hospital, plaintiff was diagnosed as having a concussion, acute cervical sprain, acute dorsal lumbar sprain and a contusion of the chest. He was released two hours later and went home. Later that day, plaintiff consulted his family physician and, after relating the events of the day, was told to rest in bed. On February 15, 1979, plaintiff again consulted his physician and complained that he was coughing up reddish phlegm. Concerned about possible rib damage, his physician had plaintiff admitted to the hospital for tests. The test results showed no rib damage and that plaintiff’s lungs were clear. The hospital physician examined plaintiff upon his admission and testified at trial that plaintiff’s lungs were clear, reflexes normal, and that he suffered only a “very mild limitation” of movement in the back and neck areas. No further medical testimony was elicited with respect to the extent of plaintiff’s limitation of movement. On February 17, 1979, plaintiff stated that he felt better and requested his release from the hospital. He was discharged and returned home. On March 9, 1979, 24 days after the accident, plaintiff returned to his job as a taxi driver. Immediately upon returning to work, plaintiff resumed driving a taxicab 12 hours per day, 6 days a week, as he had prior to the accident. The only proof of limitation *234 with respect to his work performance was plaintiff’s own testimony that he was unable to help some of his fares with their luggage “if they happened to have luggage.” Plaintiff also testified that he could not help his wife with various household chores as much as he had before the accident. Finally, plaintiff stated he had occasional transitory headaches and dizzy spells which were relieved by aspirin.
After the close of evidence, defendant moved to dismiss the complaint on the ground that plaintiff failed to establish that his injury met any of the threshold requirements of a serious injury as defined in subdivision 4 of section 671 of the Insurance Law. The court reserved decision on the motion and submitted the case to the jury on the theories that, in order to recover, plaintiff had to establish, by a preponderance of the evidence, that he had suffered either a medically determined injury of a nonpermanent nature which prevented him from performing substantially all his daily activities for not less than 90 days during the 180 days immediately following the accident or that as a result of the accident he sustained a significant limitation of use of a body function or system. The jury returned a verdict in favor of plaintiff, finding that plaintiff had proven a serious injury under both definitions. Defendant moved to set aside the verdict on the same ground as his prior motion to dismiss the complaint. The court denied the motion.
On appeal, the Appellate Division reversed and dismissed the complaint, holding that the plaintiff had failed, as a matter of law, to prove a serious injury under either definition. We agree and affirm.
In construing the statutory definition of serious injury, it is necessary to examine the policies and purposes underlying this State’s no-fault legislation. The so-called No-Fault Law was adopted by the Legislature to correct certain infirmities recognized to exist under the common-law tort system of compensating automobile accident claimants. (Insurance Law, art 18, L 1973, ch 13, § 1; Montgomery v Daniels, 38 NY2d 41,49-53.) The Legislature provided that “there shall be no right of recovery for non-economic loss [i.e., pain and suffering] except in the case of a serious injury, or for basic economic loss.” (Insurance Law, § 673, subd 1.) The No-Fault Law, as originally enacted, con-
*235 tained a two-part definition of the term “serious injury” keyed to the nature of the injuries and the amount of the medical expenses. The monetary part provided that if reasonable medical costs exceeded $500, a serious injury would be established. This section was repealed in 1977 when experience demonstrated to the Legislature that the $500 threshold provided a target for plaintiffs which was too easily met and that the standard was unsuitable to fulfill the purpose of the No-Fault Law. (Memorandum of State Executive Dept, 1977 McKinney’s Session Laws of NY, p 2450.) It was replaced with the present definition of serious injury as “a personal injury which results in death; dismemberment; significant disfigurement; a fracture; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.” (Insurance Law, § 671, subd 4.)
Tacit in this legislative enactment is that any injury not falling within the new definition of serious injury is minor and a trial by jury is not permitted under the no-fault system. We are required then to pass on the threshold question of whether the plaintiff in this case has established a prima facie case that he sustained a serious injury within the meaning of the statute.
Although the statute sets forth eight specific categories which constitute serious injury, we are only concerned on this appeal with construing two of them, to wit: whether the plaintiff suffered a serious injury which resulted in either (1) a “significant limitation of use of a body function or system”; or (2) “a medically determined injury or impairment of a non-permanent nature” which endured for 90 days or more and substantially limited the performance of his daily activities.
*236 We begin our analysis of these two categories of serious injury by recognizing that one of the obvious goals of the Legislature’s scheme of no-fault automobile reparations is to keep minor personal injury cases out of court. In support of this policy determination made by the Legislature, it seems only proper that the words contained in these two categories should be construed consistent with the legislative intent. Hence, the word “significant” as used in the statute pertaining to “limitation of use of a body function or system” should be construed to mean something more than a minor limitation of use. We believe that a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute.
Likewise in the last category of the statute — “a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment” — the words “substantially all” should be construed to mean that the person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment. As to the statutory 90/180-day period of disability requirement, it should be considered a necessary condition to the application of the statute. Where the statute is specific, as it is here, that the period of disability must be “for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment”, the Legislature has made it abundantly clear that disability falling within this threshold period must be proved along with the other statutory requirements in order to establish a prima facie case of serious injury.
There can be little doubt that the purpose of enacting an objective verbal definition of serious injury was to “significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium.” (Memorandum of State Executive Dept, 1977 McKinney’s Session Laws of NY, p 2448.) “The verbal definition provided in the [legislation *237 placed] a reasonable restriction and further limitation on the right to sue, in order to preserve the valuable benefits of no-fault, at an affordable cost.” (1977 McKinney’s Session Laws of NY, p 2450.) The Governor voiced his support of these policies when he signed the legislation into law. (NY Legis Ann, 1977, pp 310-311; see, also, Matter of Granger v Urda, 44 NY2d 91, 98.) While it is cléar that the Legislature intended to allow plaintiffs to recover for non-economic injuries in appropriate cases, it had also intended that the court first determine whether or not a prima facie case of serious injury has been established which would permit a plaintiff to maintain a common-law cause of action in tort. (Hezekiah v Williams, 81 AD2d 261; Ayala v Reyes, 66 AD2d 790.)
In light of this mandate, plaintiff’s argument that the question of whether he suffered a serious injury is always a fact question for the jury is without merit. It is incumbent upon the court to decide in the first instance whether plaintiff has a cause of action to assert within the meaning of the statute. By enacting the No-Fault Law, the Legislature modified the common-law rights of persons injured in automobile accidents (Montgomery v Daniels, 38 NY2d 41, supra) to the extent that plaintiffs in automobile accident cases no longer have an unfettered right to sue for injuries sustained. Thus, to the extent that the Legislature has abrogated a cause of action, the issue is one for the court, in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining serious injury. Since the purpose of the No-Fault Law is to assure prompt and full compensation for economic loss by curtailing costly and time-consuming court trials (Memorandum of State Executive Dept, 1977 McKinney’s Session Laws of NY, pp 2448, 2450), requiring that every case, regardless of the extent of the injuries, be decided by a jury would subvert the intent of the Legislature and destroy the effectiveness of the statute. The result of requiring a jury trial where the injury is clearly a minor one would perpetuate a system of unnecessary litigation. “[I]f the procedural system cannot find a way to keep cases that belong in no-fault out of the courthouse, the system is not going to work.” (Schwartz, No-Fault Insurance: Litiga *238 tion of Threshold Questions under the New York Statute — The Neglected Procedural Dimension, 41 Brooklyn L Rev 37, 53.) Thus, we believe the Legislature intended that the court should decide the threshold question of whether the evidence would warrant a jury finding that the injury falls within the class of injuries that, under no-fault, should be excluded from judicial remedy. If it can be said, as a matter of law, that plaintiff suffered no serious injury within the meaning of subdivision 4 of section 671 of the Insurance Law, then plaintiff has no claim to assert and there is nothing for the jury to decide. (Montgomery v Daniels, supra.)
Turning to the case before us, plaintiff contends that his injuries were serious within the meaning of the statute in that he was prevented, for at least 90 days, from performing substantially all of the material acts which constituted his usual daily activities. (See Insurance Law, § 671, subd 4.) It is undisputed, however, that plaintiff returned to work 24 days after the accident and that upon his return he immediately resumed his usual schedule of driving a taxi 12 hours per day, 6 days a week. Since plaintiff was able to maintain his daily routine for most of each day after returning to work, it should be abundantly clear that pla,intiff was not prevented from performing substantially all of his daily activities during anything close to 90 days following the occurrence of the injury. Thus, the Appellate Division correctly held, as a matter of law, that plaintiff did not meet the statutory standard of serious injury. A similar conclusion was reached in Hezekiah v Williams (supra), where plaintiff suffered a back injury in an automobile accident. She was released from the hospital six hours after the accident and returned to work three weeks later. Plaintiff testified that she could not eat, dress or bathe without assistance during the three weeks following the accident. The court dismissed the complaint, holding that plaintiff had not made out a prima facie case of serious injury since she proved only that she was disabled for a limited period of time and failed to present medical evidence that her injury was the cause of her disability.
It requires little discussion that plaintiff’s subjective complaints of occasional, transitory headaches hardly ful *239 fill the definition of serious injury. Plaintiff offered no proof that his headaches in any way incapacitated him or interfered with his ability to work or engage in activities at home. In fact, plaintiff testified that such headaches occurred only once every two or three weeks and were relieved by aspirin. We do not believe the subjective quality of an ordinary headache falls within the objective verbal definition of serious injury as contemplated by the No-Fault Law. (See Memorandum of State Executive Dept, 1977 McKinney’s Session Laws of NY, p 2448.) To hold that this type of ailment constitutes a serious injury would render the statute meaningless and frustrate the legislative intent in enacting no-fault legislation.
As to plaintiff’s contention that he suffered a “significant limitation of use of a body function or system” (see Insurance Law, § 671, subd 4), taken in its most favorable light, the evidence at trial established only that plaintiff suffered a painful sprain which limited the movement of his neck , and back. Plaintiff offered no evidence as to the extent of the limitation of movement. The only evidence of the extent of plaintiff’s injury came from the hospital duty physician who examined plaintiff on February 15. This doctor testified that plaintiff had only a “very mild limitation” of movement in his neck and back. Plaintiff’s family physician, who testified on plaintiff’s behalf, did not offer any testimony to the contrary. The other injuries plaintiff complained of were a bruised chest and a concussion. No evidence was offered to show that any of these injuries caused a significant limitation of use of a body function or system. As to the occasional headaches and dizziness plaintiff complained of, no evidence was submitted to indicate that plaintiff suffered any significant limitation of any of his body functions or systems. No proof was offered to show that these ailments ever went beyond mere temporary discomfort, relieved by aspirin. The Legislature could not have intended headaches and dizziness of the type experienced by plaintiff to constitute a significant limitation of use of a body function or system.
After a careful examination of the record, we hold that there was no line of reasoning by which the jury could have concluded that plaintiff suffered a significant limitation of *240 use of a body function or system, or that he was prevented from performing substantially all of his usual daily activities for 90 days. (See Cohen v Hallmark Cards, 45 NY2d 493.) While there is little doubt that plaintiff suffered discomfort as a result of the accident, the court has no choice but to enforce the legislative mandate and dismiss the complaint when a plaintiff fails to meet the burden of proving the threshold requirement of establishing a prima facie case that he sustained a serious injury within the meaning of the statute. (Compare Ayala v Reyes, 66 AD2d 790, supra; Simone v Streeben, 56 AD2d 237, with Liddy v Frome, 85 AD2d 716.)
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchsberg and Meyer concur; Judge Gabrielli taking no part.
Order affirmed.