■ MAXWELL ANSAH et al., Respondents, v JODI POLLACK, Appellant and Third-Party Plaintiff-Appellant. CITY OF NEW YORK, Third-Party Defendant-Respondent.—Order, Supreme Court, New York County (Martin Evans, J.), entered on or about April 9, 1991, which, *inter alia,* denied defendant and third-party-plaintiffs' motion for summary judgment dismissing the plaintiffs' complaint, affirmed, without costs.

The plaintiffs have asserted a serious injury within the meaning of Insurance Law § 5102 (d), requiring the court to make a threshold inquiry as to whether or not the injuries are serious within the meaning of that statute *(Lowe v Bennett,* 122 AD2d 728, *affd* 69 NY2d 700 [1986]). Here, the court was faced with conflicting affidavits of medical experts for both sides, each supported by written and detailed reports.

Specifically, there is a dispute between the parties as to whether or not the accident of November 8, 1986 (1) aggravated a previously existing defect in the heart (a septal defect or abnormal opening between the chambers of the heart), (2) caused a significant or permanent limitation of either the cervical or lumbosacral spine and (3) caused a scar above the right eyebrow. Dr. Nathaniel Shafer, plaintiffs' expert, relates all of these injuries to the accident, including a "contusion to the heart with septal defect." Dr. Alan Feit, the defendant's expert, and the dissent read this later phrase as indicating that the accident caused the septal defect rather than that the accident caused a contusion to a heart which had a septal defect. The thrust of the report by Dr. Feit was that the septal defect was congenital and could not have been caused by the accident.

Second, the reports differ as to the injury to the cervical and lumbosacral spine. Dr. Shafer contends there is a significant limitation of movement and Dr. Feit denies this. Third, while the word "scar" is not mentioned in the bill of particulars, there is a clear statement there that there were lacerations and swelling of the right eye.

Accordingly, on this record the plaintiffs made out a prima facie case of serious injury and the motion court properly declined to resolve credibility issues on the motion for sum-

mary judgment *(see, Pantote Big Alpha Foods v Schefman,* 121 AD2d 295 [1986]). Concur—Murphy, P. J., Rosenberger, Kassal and Smith, JJ.

Sullivan, J., dissents in a memorandum as follows: The majority affirms the denial of defendant's motion for summary judgment dismissing the complaint on the ground that the injuries allegedly sustained by plaintiff do not qualify as a "serious injury" as defined in Insurance Law § 5102 (d) because the opposing affidavits and medical reports pose a credibility question. I respectfully disagree.

Plaintiff alleges that his chest and head struck the steering wheel of his vehicle as a result of a November 8, 1986 collision with defendant's car. He felt pain in the neck and was taken to the emergency room at Bellevue Hospital, where a small laceration above the right eye, which did not require any suturing, was noted. Plaintiff complained of some soreness of the right shoulder. On physical examination he was found to have a systolic murmur, an enlarged heart and possible summation gallop. Cervical spine films showed "straightening of normal lordotic curvature which may be secondary to muscle spasm or radiographic technique. Intervertebral disc spaces intact. No fractures or dislocations." Four days later, plaintiff was seen at Bellevue's Cardiology Clinic. He was thereafter admitted electively on December 12, 1986 for repair of a congenital atrial septal defect. After an uneventful post-operative course, plaintiff was discharged on December 23, 1986. He was subsequently seen in follow-up visits at Bellevue's Cardiovascular Surgery and Cardiology Clinics. At a clinic visit on April 27, 1987, it was noted that plaintiff had returned "to work as a waiter at Waldorf, no shortness of breath or dyspnea on exertion, no irregular rhythm, does feel pounding in chest when running up stairs."

As is clear from the Bellevue records, plaintiff's cardiac problem was an incidential finding during a routine examination after an automobile accident. It is equally clear from the surgeon's report and that of defendant's expert, a cardiologist, that the condition was congenital in origin and unrelated to the accident.

The report of plaintiff's expert as to the heart problem is singularly unilluminating. He states that plaintiff had a ventrical septal defect although the Bellevue medical record shows that this is not so. He also finds that plaintiff had a "contusion to the anterior chest wall" and "contusion to the heart with septal defect." Nothing in the Bellevue record

supports either claim. It should also be noted that the doctor's conclusions are based on a review of the hospital records. In his original affidavit, submitted in opposition to the motion, he concluded that he could not "rule out that the accident had an aggravating effect." Recognizing, no doubt, the incompetency of such an opinion, the doctor submitted a supplemental affidavit ten weeks later stating that plaintiff's injuries, including "contusion to the anterior chest wall" and "contusion to the heart with septal defect" were, in his opinion, proximately caused by the accident, and resulted in an aggravation of a pre-existing heart condition. Nowhere does plaintiff's expert contradict, other than in conclusory terms, the overwhelming showing on this record, including the Bellevue Hospital records, concerning the congenital nature of plaintiff's heart defect and the medical conclusion that the heart problem is unrelated to the automobile accident at issue. No medical evidence whatsoever is presented to establish any aggravation, which it should be noted, is not claimed in plaintiff's bill of particulars. In any event, the statement is purely conclusory and is thus not entitled to any consideration. *(See, Grotzer v Levy,* 133 AD2d 67, 68.)

Nor are the remaining injuries claimed by plaintiff "serious" as statutorily defined. Plaintiff's doctor, in his original affidavit, stated that he found "lacerations above the right eye" resulting in a "disfiguring scar", which is the first mention anywhere of any scarring. It is not alleged in the bill of particulars. In any event, the mere mention of such a scar, without more, does not bring the same within the definition of "serious injury." *(See, Caruso v Hall,* 101 AD2d 967, *affd* 64 NY2d 843; *see also, Koppelmann v Lepler,* 135 AD2d 507.)

As for plaintiff's claims of cervical or lumbar sprain or strain, it is significant that, as established by plaintiff's testimony and the records of a treating physician at Bellevue Hospital, he returned to work within a month after the accident. The additional three months of lost employment was occasioned by the causally unrelated heart surgery. It is clear that plaintiff's doctor's use of the term "permanent consequential limitation of use", which was omitted from his earlier reports, with respect to the cervical and lumbosacral claims, is nothing more than a conclusory allegation in which the doctor parrots the statutory language merely to meet the statute's requirements. *(See, Grotzer v Levy, supra,* 133 AD2d 67, 68.) In this regard, defendant's expert, who examined plaintiff three years after the accident, as well as reviewed all the records, could find no objective evidence with regard to upper extrem-

ity weakness or pain or restriction of motion related to the neck or lower back.

In enacting an objective definition of serious injury, the Legislature's purpose was to exclude personal injury claims of this type from the judicial forum and thereby help contain the no-fault premium. (Licari v Elliott, 57 NY2d 230, 236.) "While it is clear that the Legislature intended to allow plaintiffs to recover for non-economic injuries in appropriate cases, it had also intended that the court first determine whether or not a prima facie case of serious injury has been established which would permit a plaintiff to maintain a common-law cause of action in tort." (Supra, at 237.) The statutory scheme is ill-served when courts refuse to accept the law's mandate and permit cases such as these to clutter their dockets.

Since it is clear that plaintiff did not sustain any injury that could be considered a "serious injury" as defined by Insurance Law § 5102 (d), the motion for summary judgment should have been granted.