Monserrate v Farmingville Taxi, Inc. (2004 NY Slip Op 50492(U))

[*1]

Monserrate v Farmingville Taxi, Inc.

2004 NY Slip Op 50492(U)

Decided on March 11, 2004

Supreme Court, Suffolk County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 11, 2004

Supreme Court, Suffolk County
 JACKELINE MONSERRATE, MEDELICIA VAZQUEZ, and MIGUEL MARIN,Plaintiffs,
against
FARMINGVILLE TAXI, INC., RED TOP JOHN F. CASTIGLIA, CHRISTINE E. LOMBARD and Defendants.
008972/2001

SIBEN & SIBEN, LLP, Attys. for Plaintiffs, 90 East Main Street, Bay Shore, NY 11706
ROBERT J. CAVA, P.C., By: Robert J. Cava, Esq., Attys. for Defendants CHRISTINE E. LOMBARD and JEFFREY BESSEN, 1038 Little East Neck Road, West Babylon, NY 11704
NORMAN VOLK & ASSOCIATES, By: John P. McEvoy, Esq., Attys. for Defendants RED TOP MANAGEMENT TRANSPORT and JOHN F. CASTIGLIA, 275 Seventh Avenue, 2nd Floor, New York, NY 10001

John J. J. Jones, J.
ORDERED that this motion by defendants, Christine Lombard and Jeffrey Bessen, and the cross-motion by defendants, Red Top Management Transport Inc. (Red Top) and John F. Castiglia, for an order granting summary judgment dismissing the complaint on the ground that the plaintiffs, Jackeline Monserrate, Medelicia Vazquez and Miguel Marin, did not sustain a "serious injury" within the meaning of N.Y. Insurance Law § 5102(d) are granted.
Plaintiffs commenced this action to recover damages for personal injuries allegedly sustained by Jackeline Monserrate and Medelicia Vazquez and loss of services by Miguel Marin as the result of a motor vehicle accident that occurred on September 22, 2000 in Suffolk County, New York. Plaintiff Monserrate was the operator of a motor vehicle that was allegedly struck in the rear. Defendants now move for summary judgment in their favor dismissing the complaint on the ground that neither plaintiff can satisfy the threshold issue of that a "serious injury" was sustained; plaintiffs have opposed the applications.
Following the accident, both plaintiffs were taken from the scene by ambulance. Plaintiff Monserrate was seen in the emergency room, where x-rays revealed no evidence of fracture. She sought follow-up treatment from a chiropractor, a psychologist and a psychiatrist and was out of [*2]work for four months. In support of the summary judgment applications, movants submitted the affirmed medical report of Dr. Brooks, who examined Monserrate on January 16, 2003, and found that she walked with a normal gait. Medical records were reviewed and it was noted that MRI studies of the left knee, the left shoulder and the cervical spine on October 14, 2000, were unremarkable, as was an MRI of the lumbosacral spine taken on November 4, 2000. Range of motion testing of the cervical spine was 75% without spasm, while there was full range of motion of the dorsal and lumbosacral spine. There was full range of motion of the upper extremities, motor power was intact, deep tendon reflexes were equal and vascular function was intact. Straight leg raising was full, deep tendon reflexes at the knees and ankles were equal and vascular function was intact. The doctor concluded that there were no causally-related objective findings to substantiate Monserrate's subjective complaints of neck pain, lower back pain and shoulder pain with headaches.
Another affirmed medical report of Dr. Brooks was submitted in relation to his examination on January 16, 2003 of Medelicia Vazquez, who was a front seat passenger in the Monserrate vehicle at the time of the accident. She, too, was taken to the emergency room by ambulance and x-rays were negative for fracture. She sought follow-up chiropractic and psychiatric care. An MRI of the brain taken on October 14, 2000, was reportedly unremarkable but an MRI of the lumbosacral spine revealed degenerative changes and a small disc herniation at L5-S-1. Her complaints at the time of the physical examination was occasional headache, neck pain, lower back, right ear and jaw pain. An evaluation by plaintiff's treating psychiatrist, Dr. Alvarez, was reviewed and it was noted that Vazquez has been receiving psychiatric treatment since 1990 for depression, which was "caused by an accident at her last job, when she suffered head trauma and injury to her back." Upon examination, Vazquez walked with a normal gait. Range of motion testing of the cervical spine was full without spasm, and there was full range of motion of the lumbosacral spine without spasm. There was full range of motion of the upper extremities, motor power was intact, deep tendon reflexes were equal and vascular function was intact. Straight leg raising was full, deep tendon reflexes at the knees and ankles were equal and vascular function was intact. The doctor concluded that there were no causally-related objective findings to substantiate subjective complaints of neck pain, back pain, or weakness and numbness of both hands.
In support of their cross-motion for summary judgment, defendants Red Top and Castiglia submitted the affirmed report of Dr. Glassman, who examined plaintiff Monserrate on June 21, 2002, when she complained of pain in the right shoulder, left shoulder, neck and lower back. Physical examination of her cervical spine revealed a normal lordosis with no spasm upon palpation. Cervical compression testing was negative. There was full range of motion of the cervical spine. Neurological examination of the upper extremities showed intact motor and sensory function with normal muscle strength and normal reflexes. Range of motion of the lumbar spine was normal, and the straight leg raising test, the Laseague test, and the Patrick's test were all negative. There was no neurosensory deficit. Examination of the shoulders showed no tenderness on palpation and full range of motion. Impingement sign was negative, as was Hawkins, drop arm, Yergason, apprehension and Speed's tests. There was no sensory loss. There was no joint line tenderness or effusion about the left knee and muscle tone and range of motion testing was normal. There was no patellofemoral creptitus. [*3]A diagnosis of resolved cervical and lumbar strain/sprain, knee sprain, and shoulder sprains was made. Monserrate was found to have no disability, however, and no need for further treatment. The doctor also noted that he found no objective evidence to support Monserrate's subjective complaints.
Cross-movants also submitted the affirmed report of a neuropsychiatrist who examined plaintiff Vazquez on June 18, 2002, at which time she complained of occasional occipital headaches, intermittent pain in the neck and lower back, and numbness in both hands and feet. Examination revealed normal strength and muscle tone in the upper and lower extremities, with negative Phalen's test and Tinel's sign. There was normal sensation to all modalities. Vazquez was noted to have full range of motion of the neck and lumbar spine without spasm but with subjective complaints of pain. Bilateral straight leg raising was normal at 90 degrees. The doctor concluded that there was "no indication of neurological disability."
In order to effectuate the purpose of no-fault legislation to reduce litigation, a court is required to decide, in the first instant, whether a plaintiff has made out a prima facie case of "serious injury" sufficient to satisfy the statutory requirements (Licari v Elliott, 57 NY2d 230, 455 NYS2d 570, 441 NE2d 1088 [1982]; Brown v Stark, 205 AD2d 725, 613 NYS2d 705 [2d Dept 1994]). If it is found that the injury sustained does not fit within the definition of "serious injury" under Insurance Law § 5102(d), then the plaintiff has no judicial remedy and the action must be dismissed (Licari v Elliott, supra, at 57 NY2d 238; Velez v Cohan, 203 AD2d 156, 610 NYS2d 257 [1st Dept 1994]). A "serious injury" is defined as a personal injury which "results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitutes such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." (Insurance Law § 5102 [d]). In view of the foregoing, the defendants met their initial burden of establishing, as a matter of law, that neither plaintiff sustained a serious injury within the meaning of Insurance Law § 5102(d) (see McKinney v Lane, 288 AD2d 274, 733 NYS2d 456 [2d Dept 2001], citing Gaddy v Eyler, 79 NY2d 955, 591 NE2d 1176, 582 NYS2d 990; Licari v Elliott, 57 NY2d 230, 441 NE2d 1088, 455 NYS2d 570).
In opposition to the motion, plaintiff Monserrate submitted an affidavit in which she states that she missed four months of work following the accident. She also claims to have pain in her neck, back and jaw, with difficulty sleeping and anxiety while driving. She also submitted an affirmed report from her treating dentist, who initially saw plaintiff on November 3, 2000 to evaluate her for injuries allegedly sustained in the underlying accident. According to his "report," the maximum jaw opening is indicated to be 4.1 mm and is described as "noisy" upon opening, but "normal" upon closing. A report of a tomogram taken that day notes some asymmetry, but the report is non-specific in the degree of deviation. It concludes, however, that Monserrate sustained a trauma to the temporomandibular joint. Plaintiff also submitted a portion of the report of a no-fault medical [*4]examiner but, since the document submitted to the Court did not include the third page of the report, it is disregarded in its entirety. Plaintiff's submissions are insufficient to raise a triable issue of fact as to whether she sustained a "serious injury" within the meaning of Insurance Law § 5102(d) (see Nixon v Muntaz, 1 AD3d 329, 766 NYS2d 593 [2d Dept 2003]), since they fail to establish that her injuries are permanent in nature or that she sustained a significant limitation of use. Moreover, Monserrate failed to demonstrate that she sustained a medically- determined injury or impairment of a non-permanent nature which prevented her from performing substantially all of the material acts which constituted her usual and customary daily activities for not less than 90 days during the 180-day period immediately following the accident, since she did not submit objective evidence substantiating the existence of a medically-determined injury which caused her extended absence from work (see Ersop v Variano, 307 AD2d 951, 953, 763 NYS2d 482 [2d Dept 2003]).
The plaintiff Vazquez submitted the affirmed report of a psychiatrist to whom she was referred for evaluation on March 17, 2001, at which time she complained of feeling depressed, nervous and irritable, and was experiencing other problems. While the doctor confirmed that Vazquez' mood and affect was depressed and highly anxious, it was noted that she was being treated for depression since 1990 for which she was taking medication. There is no comparison of objective findings with plaintiff's condition prior to the accident, however, and otherwise plaintiff Vazquez submitted no medical evidence whatsoever to support an opinion that the underlying accident caused any permanent injuries. Moreover, there is no evidence causally relating Vazquez' symptoms with the underlying accident.
Since plaintiffs failed to raise a triable issue of fact as to whether they each sustained a serious injury within the meaning of Insurance Law, the motion and cross-motion for summary judgment in favor of the defendants must be granted and the complaint is hereby dismissed (see Mu Ying Zhu v Zhi Rong Lin, 1 AD3d 416, 766 NYS2d 897 [2d Dept 2003]).