Carpenter v Pollina (2004 NY Slip Op 50491(U))

[*1]

Carpenter v Pollina

2004 NY Slip Op 50491(U)

Decided on March 19, 2004

Supreme Court, Suffolk County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 19, 2004

Supreme Court, Suffolk County
 PATRICIA CARPENTER and ROBERT CARPENTER,Plaintiffs,
against
JAMES A. POLLINA and JOSEPH B. POLLINA, Defendants.
0012890/2000

STEPHAN PERSOFF, ESQ., Atty. for Plaintiffs,
One Old Country Road, Carle Place, NY 11514
LOCCISANO & LARKIN, Attys. for Defendants
By: Peter R. McGreevy, Esq.
400 West Main Street,Riverhead, NY 11901

John J.j. Jones, J.
ORDERED that this motion by defendants, James A. Pollina and Joseph B. Pollina, for an order granting summary judgment dismissing the complaint on the ground that the plaintiff, Patricia Carpenter, did not sustain a "serious injury" within the meaning of N.Y. Insurance Law § 5102(d) is denied; and it is further
ORDERED that the cross-motion by plaintiff for an order granting summary judgment on the issue of liability is granted.
Plaintiffs commenced this action to recover damages for personal injuries allegedly sustained on December 13, 1997 when the vehicle she was operating came into contact with the vehicle owned by the defendant Joseph B. Pollina and operated by James A. Pollina. Plaintiffs claim in the bill of particulars that she sustained "pain to neck and lower back; pain to face and jaw; pain to neck radiating down her right arm with tingling and numbness present at her right arm; pain to both knees; TMJ; cervical myofascitis with radiculopathy; lumbar sprain; headaches; carpal tunnel syndrome; central disc herniation C2-3 and 3-4; broad central disc herniation C5-6 with disc material nearly reaching ventral surface of spinal cord; spondylosis; chronic fibromyalgia pain syndrome." The plaintiff testified at her deposition that although the police responded to the scene of the accident, no ambulance was called and the plaintiff went home following the accident. Photographs that were identified at depositions show no visible damage to plaintiff's vehicle, which was allegedly rear-ended. Thereafter, plaintiff sought medical care at Amityville Rehabilitation, where she was already actively under treatment for injuries to her lower back, right knee, right shoulder and temporomandibular joint (TMJ) syndrome sustained in a motor vehicle accident that occurred on December 29, 1995. She was also being treated by a psychiatrist for depression, anxiety and panic attacks arising out of the earlier accident.
In support of their motion, defendants submitted the affirmed medical report of a neurologist [*2]who examined plaintiff on May 20, 2002, and received a history of the prior accident from which plaintiff claimed to have suffered low back pains with left sciatica, migraine headaches, carpal tunnel syndrome and injury with pain to the right knee. She was also treated for TMJ and psychological problems. No medical records pertaining to the earlier injuries were available, however, for his review. It was reported that plaintiff was symptomatic until the 1997 accident, during which she sustained no direct trauma. She claims, however, that after the later accident she had accentuation of her previous symptoms, as well as neck pains radiating down the right arm. At the examination, plaintiff complained of severe frequent migraine headaches, neck pain with pain radiating down the right arm, numbness in both hands and fingers. She reported that she was unable to heel or toe walk because of low back pain but sustained posture holding showed no pronator drift. Muscle strength testing was within normal limits. Deep tendon reflexes were symmetrically active "except for ankle jerks at 2+ right and 2- left." There was diffuse impairment of pinprick and vibration in the right upper extremity and lateral half of both lower extremities. Forward flexion was limited, as was cervical range of motion. There was no spasm present, however, in the posterior cervical, thoracic or lumbosacral muscles. An impression of emotional disorder and probable past history of left S1 radiculitis was reported.
In opposition to the motion, plaintiff submitted her affidavit in which she states that she continues to suffer migraine headaches along the left side of her face, pain across her back and a tingling sensation in her legs and hands. She wears a splint on her right wrist daily and a neck brace two hours a day. Plaintiff also submitted the affirmed report of Dr. Sterling, who saw plaintiff two days following the accident, at which time computerized muscle testing revealed limitations of motion on lateral flexion extension and lateral rotation of her neck. He saw her again on February 13, 1998, when there was spasm noted about the cervical spine and the lumbar spine. He continued to treat plaintiff and on July 22, 1998, performed neuromuscular testing that revealed "a weakness in the neck area of 18%; a weakness in the deltoid area of 34%" and subsequent testing confirmed the deficiency in the cervical area. As of October 14, 1998, additional diagnostic testing found functional impairment of 32% of the neck with nerve roots at C5, C6 and C7 involvement. An MRI taken on February 18, 1998 reportedly showed central disc herniations at C2-3 and C3-4 "resulting in indentation of the ventral thecal sac with effacement of the ventral subarachnoid space at C3-4" and a broad central disc herniation at C5-6 "with disc material nearly reaching the ventral surface of the spinal cord." It also reportedly showed a large broad posterior disc herniation at C6-7 with cord impingement and an anterior disc herniation at C6-7. In the opinion of plaintiff's treating physician, plaintiff sustained a significant functional impairment and limitation of use of her neck with radiating pain down her arms that is permanent in nature.
In order to effectuate the purpose of no-fault legislation to reduce litigation, a court is required to decide, in the first instant, whether a plaintiff has made out a prima facie case of "serious injury" sufficient to satisfy the statutory requirements (Licari v Elliott, 57 NY2d 230, 455 NYS2d 570, 441 NE2d 1088 [1982]; Brown v Stark, 205 AD2d 725, 613 NYS2d 705 [2d Dept 1994]). If it is found that the injury sustained does not fit within the definition of "serious injury" under Insurance Law § 5102(d), then the plaintiff has no judicial remedy and the action must be dismissed (Licari v Elliott, supra, at 57 NY2d 238; Velez v Cohan, 203 AD2d 156, 610 NYS2d 257 [1st Dept [*3]1994]). A "serious injury" is defined as a personal injury which "results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitutes such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." (Insurance Law § 5102 [d]).
Defendants submitted a copy of the transcript of plaintiff's deposition taken November 2, 1998 in relation to an action stemming from a prior motor vehicle accident in 1995, in which she testified that she first sought medical treatment from Dr. Sterling in 1996. It is alleged in the bill of particulars filed in that prior action that plaintiff sustained "acute severe sprain of the cervical spine with radiculitis and nerve root irritation of the right and left upper extremities with MRI findings of a prominent central disc herniation of C6-7 with some mass effect on the cervical cord." It was also alleged that she sustained "a mild bulging disc at C5-6 with reversal of the normal curvature" as well as severe sprain of the lumbosacral spine, bilateral carpal tunnel syndrome, temporomandibular joint dysfunction and psychological trauma, as well as other injuries.
It is among the contentions of defendants that plaintiff has failed to raise a triable issue of fact since the affirmed report of her treating physician fails to set forth a comparison of objective findings with plaintiff's condition prior to this accident. While plaintiff's proof is noticeably deficient in its failure to address plaintiff's pre-existing injuries, it is noted that some of the injuries for which the plaintiff has submitted objective proof, such as the central disc herniations at C2-3 and C3-4, were not previously claimed to have been sustained in the prior accident. Such evidence, coupled with the plaintiff's affidavit and the findings that plaintiff suffers a significant range of motion deficit of the cervical spine, is sufficient to raise a triable issue of fact (see Mela v Gentile, 306 AD2d 388, 761 NYS2d 482[2d Dept 2003]; see also Singh v Varano, 306 AD2d 340, 760 NYS2d 545 [2d Dept 2003]).
To the extent that plaintiffs seek partial summary judgment in their favor on the issue of liability, it is well-settled that where a vehicle is lawfully stopped, there is a duty imposed upon the operators of vehicles traveling behind it in the same direction to come to a timely halt (Parise v Meltzer, 204 AD2d 295, 611 NYS2d 291, 292 [2d Dept 1994]). Accordingly, a rear-end collision into a lawfully-stopped vehicle creates a prima facie case of liability in favor of the operator of the stationary vehicle and imposes a duty of explanation on the operator of the moving vehicle (Parise v Meltzer, supra at 611 NYS2d 291, 292; Edney v Metropolitan Suburban Bus Auth., 178 AD2d 398, 577 NYS2d 102 [2d Dept 1991]). Under the circumstances of this case, defendant was under a duty to maintain a safe distance between his vehicle and plaintiff's vehicle and his failure to do so, in the absence of an adequate, non-negligent explanation, constituted negligence as a matter of law (see Aromando v City of New York, 202 AD2d 617, 609 NYS2d 637 [2d Dept 1994]). Accordingly, partial summary judgment on the issue of liability in favor of the plaintiff is warranted.