Whalen, J.
(dissenting). I respectfully dissent because I disagree with the majority’s conclusion that defendants met their initial burden with respect to the 90/180-day category of serious injury (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). I would thus modify the order by denying in part defendants’ motion for summary judgment and reinstating the complaint with respect to the 90/180-day category of serious injury within the meaning of Insurance Law § 5102 (d).
Defendants’ submissions failed to establish that plaintiff suffered only some “ ‘slight curtailment’ ” of his usual activities during no less than 90 of the 180 days immediately following the accident, inasmuch as they did not demonstrate what plaintiffs usual and customary daily activities were, much less that plaintiff could not perform substantially all of those activities (Gaddy v Eyler, 79 NY2d 955, 958 [1992]; see Paolini v Sienkiewicz, 262 AD2d 1020, 1020 [1999]; Russell v Knop, 202 AD2d 959, 960 [1994]). Defendants, instead, chose to rely almost exclusively on the fact that plaintiff did not miss any work as a result of his injuries. While plaintiff testified that he continued to work after the accident and took time off from work only to *1253 attend appointments with his doctors, plaintiffs duties at work were different after the accident than they were before it (cf. Gaddy, 79 NY2d at 958; Licari v Elliott, 57 NY2d 230, 238 [1982]). At the time of the accident, plaintiff was a technician at a nuclear power plant and he performed calibrations, testing and repairs on equipment. Subsequent to the accident, he was assigned a supervisory position as an outage coordinator, i.e., a desk job. Plaintiffs daily and customary activities at work had changed and become much more sedentary. I further note that plaintiffs deposition occurred nearly three years after the accident, long after the relevant 180-day time frame (see generally Lowell v Peters, 3 AD3d 778, 780 [2004]). This fact is important because defendants’ attorney asked plaintiff at the deposition, “Is there anything that you can’t do today that you could do prior to the accident, any activities at all?” What plaintiff could do as of the date of the deposition is irrelevant; the relevant inquiry concerns what he could or could not do in the 180 days immediately following the accident. Therefore, any information gleaned about plaintiffs daily activities as a result of that question is irrelevant to the analysis of whether he sustained a serious injury under the 90/180-day category. Without establishing a baseline of plaintiffs activities during the relevant time frame, defendants did not meet their initial burden (see Ames v Paquin, 40 AD3d 1379, 1380 [2007]).
Additionally, when viewing the evidence in the light most favorable to plaintiff, the nonmoving party (see Nichols v Xerox Corp., 72 AD3d 1501, 1502 [2010]), I note that there was evidence that plaintiffs work duties had changed significantly and, thus, a question of fact exists regarding whether plaintiff was able to perform his usual daily activities for 90 of the 180 days immediately following the accident.
I also note my concern with the majority’s apparent reliance upon the affirmed report of defendants’ medical expert, who opined that plaintiff suffers from a “multilevel degenerative” condition “with no indication of any acute traumatic injury” and “is obviously not disabled” in determining that defendants met their initial burden, while at the same time concluding that the affidavit of plaintiffs treating physician is insufficient to raise an issue of fact with respect to causation. Defendants’ expert based his opinion on the findings contained in what may be an unsworn MRI report, not included in the record, interpreting an MRI film that he did not review and that is also not included in the record. Plaintiff’s treating physician, on the other hand, disagreed with the assessment of defendants’ expert that there was no evidence of traumatic injury, based on her *1254 review of plaintiffs MRI films and medical records and the fact that plaintiff was asymptomatic prior to the accident, as demonstrated by plaintiffs “medical history” and the fact that his “pre-existing degenerative changes” did not “prompt him to seek any medical attention” (see generally Fanti v McLaren, 110 AD3d 1493, 1494 [2013]; Verkey v Hebard, 99 AD3d 1205, 1206 [2012]; Austin v Rent A Ctr. E., Inc., 90 AD3d 1542, 1543-1544 [2011]; Terwilliger v Knickerbocker, 81 AD3d 1350, 1351 [2011]; Mack v Pullum, 37 AD3d 1063, 1063 [2007]). Only plaintiffs treating physician appears to have reviewed plaintiffs medical records prior to the accident, there are no pre-accident MRIs for comparison, and, contrary to the majority’s conclusion, plaintiff’s “submissions in opposition to the motion did . . . adequately address how [the neck injury], in light of [his] past medical history, [is] causally related to the subject accident” (Webb v Bock, 77 AD3d 1414, 1415 [2010] [internal quotation marks omitted]).
Present—Smith, J.P., Peradotto, Lindley, Valentino and Whalen, JJ.