OPINION OF THE COURT
Philip S. Straniere, J.
Plaintiff, Camille Manning, commenced this Supreme Court action against the defendant, Barbara Bassi, alleging that owing to the negligence of the defendant in the operation of her motor vehicle, plaintiff suffered serious personal injuries. A jury trial commenced on May 8, 2017 and continued on May 9, 10, 11, 12, 15, and 17.
On May 9, the jury rendered a verdict in regard to the liability issue finding the plaintiff 15% responsible for the incident and the defendant 85% at fault. The matter proceeded to trial on the issue of damages.
Prior to taking testimony the parties entered into a “control contract.” This is more commonly known as a “high/low agreement.” The purpose of this understanding is to cap the amount the plaintiff may recover irrespective of the jury award while at the same time guaranteeing that there would be some minimum recovery for the plaintiff in the event the jury made no award for damages. The court was informed that the high was to be the policy limit of $1,300,000 and the low $500,000, the amount of the last settlement offer from the defendant. Neither counsel before the court was privy to any other terms of the agreement as it was negotiated by someone else at plaintiffs law firm and by an adjuster for defendant’s carrier. For instance, neither attorney was aware whether the control contract prohibited any appeals, or if the plaintiff would be compensated even if the matter was dismissed by the court before or after submission to the jury.
At the end of plaintiff’s case, the court granted defendant’s motion to dismiss the action because plaintiff failed to prove a prima facie case of “serious injury” under the Insurance Law. The issue of damages was not submitted to the jury. Prior to rendering its decision to dismiss the case, the court, out of the presence of the jury, informed counsel of its intention and gave plaintiff the opportunity during the lunch adjournment to produce some case law which would allow the case to go to the jury on the issue of “serious injury” when no medical witness testified as to any of the statutory categories. The cases produced by plaintiff were either not on point or all involved a dispute over a particular serious injury category.
*582 This written decision is being generated to memorialize the findings the court placed on the record in granting defendant’s motion on May 17, 2017.
The court was compelled to dismiss the plaintiff’s case because there was no testimony elicited from any of the plaintiff’s four medical witnesses which specifically described the plaintiff’s alleged injuries as qualifying for one of the categories of injury set forth in the Insurance Law. No medical witness was asked any of the “no-fault” questions and therefore none expressed an opinion in that regard as to how the plaintiff’s injuries met the statutory standard.
There are nine categories of injury set forth in Insurance Law § 5102 (d) which if proved would entitle a plaintiff to maintain an action for a “serious injury.” Not only must the plaintiff establish that the injury was causally related to and arose from the incident, but the plaintiff must establish the injury is a “serious injury” under the statute. The Insurance Law lists the nine categories in a run-on sentence; the court has separated and labeled them to make them more readable.
“Serious injury” means a personal injury which results in
(a) Death;
(b) Dismemberment;
(c) Significant disfigurement;
(d) A fracture;
(e) Loss of a fetus;
(f) Permanent loss of use of a body organ, member, function or system;
(g) Permanent consequential limitation of use of a body organ or member;
(h) Significant limitation of use of a body function or system;
(i) A medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constituted such person’s usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
Based on the court’s experience with these trials, the most common categories of serious injury sought are (g), (h) and (i) above. However, it would be complete speculation for the court to presume which category or categories plaintiff was planning to present to the jury as being the basis of her serious injury, *583 because no medical witness was asked to opine as to whether the alleged injuries of the plaintiff met any of the criteria of the statute and thereby could be submitted to the jury for determination.
In fact, plaintiff’s request for charge (court exhibit V) in regard to damages has no reference to any of the Pattern Jury Instructions (PJI) charges for serious injury (PJI 2:88A-2:88G). Defendant’s request for charge (court exhibit VI) only referenced PJI 2:88G (category [i] above), a nonpermanent medically determined injury preventing performance of substantially all of the plaintiff’s daily activities for 90 out of the first 180 days following the accident.
Plaintiff’s counsel only asked each medical witness, all of whom were treating physicians, whether the plaintiff has suffered a permanent injury as a result of the incident. That is not the standard to prevail under the Insurance Law. The injury whether permanent or not must meet the criteria of Insurance Law § 5102 (d).
There is no inherent right of a plaintiff to have a jury determine if the plaintiff has suffered a serious injury. The court in the first instance must conclude if the plaintiff has established a serious injury under the statute.
“In light of this mandate, plaintiff’s argument that the question of whether he suffered a serious injury is always a fact question for the jury is without merit. It is incumbent upon the court to decide in the first instance whether plaintiff has a cause of action to assert within the meaning of the statute. By enacting the No-Fault Law, the Legislature modified the common-law rights of persons injured in automobile accidents ... to the extent that plaintiffs in automobile accident cases no longer have an unfettered right to sue for injuries sustained. Thus, to the extent that the Legislature has abrogated a cause of action, the issue is one for the court, in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining serious injury .... [R]equiring that every case, regardless of the extent of the injuries, be decided by a jury would subvert the intent of the Legislature and destroy the effectiveness of the statute .... Thus, we believe the Legislature intended that the court should decide the threshold question of whether *584 the evidence would warrant a jury finding that the injury falls within the class of injuries that, under no-fault, should be excluded from judicial remedy.” (Licari v Elliott, 57 NY2d 230, 237-238 [1982].)
Admittedly, the issue of whether the plaintiff has sustained a serious injury under the statute is usually raised in a pretrial motion for summary judgment by the defendant. A review of the court record discloses that no motion was ever made. The failure to bring a “threshold” motion in this case is puzzling in view of the plaintiff’s history of prior accidents and documented degenerative conditions. It is one of several questionable non-actions undertaken by the carrier or defense counsel in preparing this case for trial. For instance, defendant’s carrier has no pictures of the damage to the defendant’s vehicle which would be relevant on the issue of the force of the impact.
There is nothing that precludes the defendant from moving to dismiss the plaintiff’s cause of action at the close of the plaintiff’s case or after the presentation of all the evidence by raising the issue of whether the plaintiff has presented sufficient evidence to permit the question of a statutory serious injury to be submitted to the jury. There is no case law or statute stripping the court of its “gate-keeper” role regarding the plaintiff establishing a “serious injury” under the statute. In fact, most of these “threshold” motions either result in dismissal of the plaintiff’s complaint or in the court finding that a question of fact exists as to the extent of the plaintiff’s injury to be determined at trial. But again, plaintiff’s counsel never asked any of its medical witnesses, all of whom were treating physicians, any questions as to how the alleged injuries met the statutory definition of a serious injury.
Although not a consideration in granting defendant’s motion to dismiss, there are some other puzzling aspects to this case. For instance, there were MRIs performed at Regional Radiology on the plaintiff in May 2011 before the current accident and November 2013 immediately after the accident both of which show neither disk herniations nor bulges. These two MRI reports are only in the treating chiropractor’s files. They apparently are not part of the medical records of plaintiff’s other treating physician witnesses. All issues regarding plaintiff’s back problems are identified as being degenerative in these reports. Because the plaintiff moved into evidence the entire medical record of the first three treating physicians, *585 which included all or some of these reports, the contents of these reports would have been before the jury. Defendant objected to the reports coming into evidence as the radiologist was not called by the plaintiff to testify as to the contents of the films, making the reports inadmissible hearsay (Wagman v Bradshaw, 292 AD2d 84 [2002]). This court permitted the reports to come into evidence relying on its reasoning in Bako v DeCaro (2002 NY Slip Op 50271 [U] [Civ Ct, Richmond County 2002]) in which it disagreed with certain aspects of Wagman finding that the practice in medicine is for other medical professions to rely on the reports from the radiologists in confirming their own diagnosis of the patient and developing a treatment plan. The court permitted the reports to remain in the admitted files even though counsel for plaintiff failed to ask the proper questions of the medical witnesses. Questions such as, “you did not rely upon the report to make your diagnosis but used the radiologist’s report to confirm your own objective findings and develop a treatment plan,” may also be used to avoid any Wagman issues. Counsel did not do this.
There was considerable testimony from the medical witnesses concerning an MRI conducted at Stand-Up MRI of Staten Island in December 2013 about 10 weeks after the accident which is a different facility and which showed disk herniations and bulges requiring extensive treatment, pain management and surgery. When plaintiffs surgeon was asked on cross-examination about this, and why the May 2011 report showed no such condition, he opined it proved the accident caused the condition. He was never asked by defense counsel about the November 2013 post-accident MRI showing only degenerative conditions.
The problem with the surgeon’s opinion that the October 2013 incident caused these herniations and bulges is that the plaintiff opened to the jury and built her case on the theory that the accident exacerbated these preexisting conditions. If she did not have herniations and bulges before the accident, how did they become exacerbated by it? It should also be noted that the plaintiff never moved the surgeon’s file into evidence after the initial objection by defense counsel.
There was also testimony that the plaintiff was involved in another motor vehicle accident in 1998 in which she sustained neck and back injuries and had some injury to her back in 2011 before the accident playing golf.
There are three possible explanations for the apparent discrepancies between the MRIs. First, the Regional Radiology *586 reports are wrong. Second, the Stand-Up MRI report is wrong. Or, third, there was another incident between the November 11, 2013 MRI and the December 29, 2013 MRI which caused plaintiffs injuries.
An in-depth review of the medical testimony and exhibits conducted by the court to reduce the decision to writing further supports the conclusion that the plaintiff failed to establish a prima facie case.
The first medical provider testifying was the pain management physician. His first meeting with the plaintiff was on May 22, 2014, almost seven months after the date of the accident of October 25, 2013. He could not therefore opine on the issue of a medically determined injury which prevented plaintiff from performing her usual and customary acts for 90 of the 180 days immediately following the accident. He based his testimony, report and treatment solely on MRIs performed December 29, 2013 and after that date. He therefore had no knowledge of the 2011 or November 2013 MRI, of any prior objective tests, or of her injuries from the 1998 car accident or her 2011 golf injury. He apparently did not have the treating chiropractor’s report or the records from any other prior treating physician, so he would not know, for instance, what was plaintiff’s normal range of motion as opposed to what is the normal range of motion for the average person which he and other treating doctors used to reach their conclusions.
The pain management doctor testified that his records were electronically stored. Although the court had the file marked into evidence, over defendant’s objection, a review of the testimony discloses that there was no testimony in compliance with CPLR 4539 (b) to properly authenticate the records. The problem is that the witness did not generate the records in the file he brought to court and that were marked into evidence, an employee apparently did. A review of the file discloses that some of the documents are marked with a fax number and dates from April and May 2017, which would seem to indicate they were not part of the scanned medical record the doctor alleged were made and stored contemporaneously with a visit by the plaintiff or received from a third party during the course of treatment. His records show that he performed several cervical medial branch blocks on the plaintiff each with the preoperative diagnosis of “cervical spondylosis” which is a degenerative condition and not one produced from trauma, such as an accident. He was not asked to opine as to any of the serious injury *587 categories and therefore his testimony failed to prove plaintiff’s prima facie case of serious injury.
The second medical professional to testify was the chiropractor who treated the plaintiff between November 11, 2013 and May 2014 when he determined she had reached the maximum benefit she could from chiropractic treatment. He referred the plaintiff to an orthopedist. Her final visit was on July 31, 2014. His file contains the MRI report of November 11, 2013 and of December 29, 2013. He too has no prior records or tests even though the November MRI report refers to a prior MRI in 2007. He testified that he made no change in his treatment plan even though the November 11, and December 29, 2013 MRI reports seem to have contradictory findings. There is no notation in the file that the chiropractor recommended plaintiff to stop working until the plaintiff asked him in writing to issue a letter to the insurance carrier recommending that she cease working as of April 4, 2014. The original date in the letter to the chiropractor was March 31, 2014 and it was crossed out. The chiropractor in his narrative report set the date he advised plaintiff to stop working as April 11, 2014.
This issue of when the plaintiff stopped work could be resolved if the plaintiff provided either testimony from her employer or records in admissible form showing when she stopped working. No such testimony or records were produced. In fact, the plaintiff elected not to call a witness from plaintiff’s employer even though such witness had been previously disclosed. Plaintiff produced no admissible evidence to establish when she stopped working allegedly as a result of this accident. In any case, the chiropractor would be the only medical professional who could establish the criteria for the 90/180-day category of serious injury. He was not asked to opine about this or any of the other serious injury categories. Therefore, plaintiff failed to establish a prima facie case of serious injury with this witness.
The third medical witness was the neurologist. He first saw the plaintiff on April 16, 2014 as a referral from the chiropractor. He states he reviewed an MRI, but did not indicate which one and the earliest MRI report in his file is dated January 27, 2017. He ordered EMG/nerve conduction velocity studies and conducted a complete neurological examination. He diagnosed traumatic cervical and lumbar radiculopathy exacerbation. His file was also introduced into evidence. He was not asked whether the file was stored electronically. He stated that he *588 recommended that the plaintiff stop working. If this is accurate the earliest date the plaintiff could have stopped working would have been April 16, 2014. This contradicts what the chiropractor put in his letter that April 11, 2014 was the date after which she was told to stop working. In any case, neither witness had personal knowledge when the plaintiff stopped working, or if she even did.
The neurologist opined that the radiculopathy plaintiff currently suffered from resulted from the accident. He based this conclusion solely on the allegation that the plaintiff had no complaints before that date, although he had no medical records to verify what was her condition before the accident and relied only on the plaintiff’s narrative. He was not asked any question as to whether the plaintiff had a serious injury as defined in the statute. He offered no testimony which established plaintiff’s prima facie case of serious injury.
The final medical expert was the orthopedic-spine surgeon who performed a cervical discectomy on plaintiff on June 15, 2015. The plaintiff’s initial visit to him was in May 2015. The first MRI he was given was the one from December 29, 2013. He had X rays from November 11, 2013 but did not have the MRI from that date nor any of the plaintiff’s prior tests. As noted above his records were never moved into evidence and when asked on cross-examination why a 2011 MRI showed no herniations or bulges, he concluded that established that the October 25, 2013 accident therefore caused them and led to the surgery. He was not asked to explain why the November 11, 2013 MRI, post-accident, also differed from the December 29, 2013 MRI. His conclusion that the injury was new contradicted the plaintiff’s theory of the case that the injury exacerbated and aggravated prior existing conditions in plaintiff’s spine. The surgeon was not asked to opine as to any of the serious injury categories of the statute. Therefore, his testimony failed to establish plaintiffs prima facie case.
Plaintiff’s witnesses were only asked to opine as to the issue of causation between the accident and plaintiff’s alleged injuries. Their answers may have been enough to warrant asking the jury to decide if the accident was a substantial factor in causing plaintiff’s injuries but were not sufficient to conclude she had suffered a serious injury as defined in the statute.
Because the plaintiff never solicited an opinion from any of her medical witnesses addressing the categories of “serious injury” set forth in the Insurance Law, the court was required to grant defendant’s motion to dismiss.
*589 The foregoing is the written decision to detail the court’s oral dismissal of plaintiffs action for failure to prove a prima facie case.