OPINION OF THE COURT
Peter J. Kelly, J.
The defendants’ moving papers establish that the plaintiff was involved in an automobile accident on May 19, 2006 and commenced this action to recover for her alleged injuries. The defendants contend that the plaintiffs claimed injuries to her cervical spine and right shoulder do not meet the serious injury threshold set forth by Insurance Law § 5102 (d) and her complaint should therefore be dismissed.
In support of their argument, the defendants have offered the affirmations of Edward A. Toriello, M.D., an orthopedic surgeon, Monette G. Basson, M.D., a neurologist, and Stephen W Lastig, M.D., a radiologist. Dr. Toriello’s affirmation states that he conducted an orthopedic examination of the plaintiff on March 26, 2008 where he found, inter alia, the plaintiff to have full range of motion in her cervical spine and right shoulder by setting forth the ranges of motion he observed and comparing it to what he claimed the “normal” range of motion for the allegedly affected body parts were. Dr. Toriello opined that the plaintiff sustained a “resolved cervical hyperextension injury and resolved right shoulder strain.”
Dr. Basson conducted a neurological evaluation of the plaintiff on March 13, 2008. Dr. Basson also found the plaintiff to have full range of motion in her cervical spine by stating the observed range of motion and comparing it to what she claimed to be the “normal” range of motion for the allegedly affected body part. Dr. Basson opined that the plaintiff recovered from any cervical strain she had sustained and that she was neurologically intact.
Dr. Lastig examined MRI films of the plaintiffs cervical spine and right shoulder taken on August 5, 2006 and August 30, *955 2006, respectively. As to the cervical spine, Dr. Lastig averred that the abnormalities displayed in the studies were degenerative in origin and not causally related to this accident. As to the plaintiffs right shoulder, Dr. Lastig opined that the MRI film depicted no abnormalities.
On a motion for summary judgment made pursuant to Insurance Law § 5102 (d), a defendant establishes entitlement to dismissal as a matter of law by demonstrating that all of the plaintiffs alleged injuries were either not “serious,” through proof that none of the statutory categories are fulfilled, or that the plaintiffs injuries are not causally related to the accident at issue (see e.g. Baez v Rahamatali, 6 NY3d 868 [2006]; Pommells v Perez, 4 NY3d 566, 572 [2005]).
The defendants demonstrated in the first instance that the plaintiffs claimed injuries to her right shoulder were not “serious” as a matter of law (see Licari v Elliott, 57 NY2d 230 [1982]; Guzman v Michael Mgt., 266 AD2d 508 [1999]; see also Meely v 4 G’s Truck Renting Co., Inc., 16 AD3d 26 [2005]; Kearse v New York City Tr. Auth., 16 AD3d 45 [2005]; Willis v New York City Tr. Auth., 14 AD3d 696 [2005]; Sieradzki v US Express Leasing, 13 AD3d 608 [2004]; Fauk v Jenkins, 301 AD2d 564 [2003]). In opposition, the plaintiff failed to raise an issue of fact as to whether the injury to the plaintiffs shoulder was serious as the plaintiffs treating physician, David Zelefsky, M.D., makes no mention of either contemporaneous or recent assessments of the “qualitative nature” of the plaintiffs limitations in her shoulder “based on the normal function, purpose and use of the body part” (Toure v Avis Rent A Car Sys., 98 NY2d 345, 353 [2002], quoting Dufel v Green, 84 NY2d 795, 798 [1995]).
On the other hand, the defendants’ moving papers fail to establish prima facie that the injuries sustained by the plaintiff to her cervical spine were not “serious” within the meaning of the Insurance Law (see Gaddy v Eyler, 79 NY2d 955 [1992]; Licari v Elliott, 57 NY2d 230 [1982]). Although the defendants’ examining neurologist and orthopedist each quantified the ranges of motion they observed in the plaintiffs cervical spine, the doctors’ opinions conflicted significantly concerning what the “normal” anatomical range of motion was for flexion and extension in the cervical spine. These findings are fatal to the defendants’ attempt to establish, prima facie, that the plaintiffs injuries were not “serious” within the meaning of the Insurance Law (Joseph v Hummel, 21 Misc 3d 1105[A], 2008 NY Slip Op 51975[U] [2008]).
*956 The defendants do, however, establish a prima facie entitlement to dismissal on the issue of the causal connection between the accident and the plaintiffs claimed disc bulges in her cervical spine with the affirmation from Dr. Lustig who opined that the abnormalities in the plaintiffs cervical spine were degenerative in origin and not traumatically induced (see Lorthe v Adeyeye, 306 AD2d 252 [2003]; see also Ginty v MacNamara, 300 AD2d 624 [2002]; Narducci v McRae, 298 AD2d 443 [2002]).
In opposition, the plaintiff again relies on the affirmation from David Zelefsky, M.D., her treating physician.[1] Dr. Zelefsky opined as follows on the issue of causation:
“It is my expert medical opinion that the injuries to [the plaintiffs] neck, upper and mid-back and right shoulder as diagnosed are causally related to the May 19, 2006 motor vehicle accident ... It is further my expert chiropractic [sic] opinion that the disc pathology diagnosed via MRI are injuries of a permanent nature and are causally related to the subject motor vehicle accident of May 19, 2006.”
Until very recently, the court was confident in relying on authority from the Second Department clearly holding that where a plaintiffs medical provider fails to “address” an opinion of a defendant’s radiologist that injuries to an affected body part are the result of a degenerative process and are unrelated to the accident, any opinion as to causation offered by the plaintiffs medical provider is rendered speculative (see e.g. Ferebee v Sheika, 58 AD3d 675 [2009]; Saint-Hilaire v PV Holding Corp., 56 AD3d 541 [2008]; Johnson v Berger, 56 AD3d 725 [2008]; Marrache v Akron Taxi Corp., 50 AD3d 973 [2008]; Byam v Waltuch, 50 AD3d 939 [2008]; Cornelius v Cintas Corp., 50 AD3d 1085 [2008]; Cadena v Espinal, 49 AD3d 582 [2008]; Cruz v Calderone, 49 AD3d 798 [2008]; Rashid v Estevez, 47 AD3d 786 [2008]; Roman v Fast Lane Car Serv., Inc., 46 AD3d 535 [2007]; Luciano v Luchsinger, 46 AD3d 634 [2007]; Siegel v Sumaliyev, 46 AD3d 666 [2007]; Abreu v Bushwick Bldg. Prods. & Supplies, LLC, 43 AD3d 1091 [2007]; Gordon-Silvera v Long Is. R.R., 41 AD3d 431 [2007]; Young Soo Lee v Troia, 41 AD3d.
*957 469 [2007]; Passaretti v Ping Kwok Yung, 39 AD3d 517 [2007]; Phillips v Zilinsky, 39 AD3d 728 [2007]; Zinger v Zylberberg, 35 AD3d 851 [2006]; D’Alba v Yong-Ae Choi, 33 AD3d 650 [2006]; Khan v Finchler, 33 AD3d 966 [2006]; Baksh v Shabi, 32 AD3d 525 [2006]; Zarate v McDonald, 31 AD3d 632 [2006]; Cardillo v Xenakis, 31 AD3d 683 [2006]; Bycinthe v Kombos, 29 AD3d 845 [2006]; Gomez v Epstein, 29 AD3d 950 [2006]; Giraldo v Mandanici, 24 AD3d 419 [2005]; Lorthe v Adeyeye, supra; Ginty v MacNamara, supra; Narducci v McRae, supra).
In this case, Dr. Zelefsky’s affirmation makes no express mention of either degeneration or the opinion of the defendants’ radiologist attesting to the existence of a degenerative condition as required by the above-cited prior authority. Accordingly, Dr. Zelefsky’s conclusions as to causation would appear to be “speculative” and “insufficient to raise an issue of fact” since it failed to “address” the issue of degeneration to the extent required by said authority.
However, on May 26, 2009, the Appellate Division, Second Department, issued a decision, Sinfelt v Helm’s Bros., Inc. (62 AD3d 983 [2009]), which appears to cast serious doubt on the continued viability of the above authority. In Sinfelt, the defendants had proffered in support of its motion for summary judgment an affirmation from Sondra Pfeffer, M.D., a radiologist, who opined that “abnormalities displayed in the [MRI] studies [of the plaintiff’s cervical and lumbar spines] were degenerative in origin, predated the accident and [were] not causally related thereto.”
In opposition, the plaintiff had submitted an affidavit from her treating chiropractor, Mark Snyder, D.C., who stated on the issue of causation that
“the injuries sustained by the plaintiff were causally related to the motor vehicle accident of January 13, 2003 and that said injuries were consistent with the clinical presentation in my office . . . , and that the disc pathology diagnosed via MRI was causally related to the motor vehicle accident of January 13, 2003 and said findings were consistent with the clinical presentation.”
Like the present case, there was absolutely no express mention in the plaintiffs expert’s affidavit of either degeneration or addressing the opinion of the defendants’ radiologist which had attested to the existence of a degenerative condition.
After reviewing the plaintiffs submissions in Sinfelt this court held, in reliance on the above precedents, that the plaintiff had *958 failed, to raise an issue of fact on causation by failing to properly address the claims of degeneration stating:
“Although the chiropractor averred that the plaintiff displayed a loss of range of motion in her cervical and lumbar spines, he, as well as Dr. Rizzuti, failed to comment on and contradict the conclusion of the defendants’ radiologist that the conditions in the plaintiff’s cervical spine were pre-existing and degenerative. Therefore, the assertions by the chiropractor that the plaintiffs injuries to her cervical spine were causally related to the accident were mere speculation.” (2008 NY Slip Op 33587[U], *2 [2008].)
However, on the subsequent appeal, which was apparently not argued, the Appellate Division, Second Department, held that the plaintiff had indeed raised an issue of fact, and overturned the dismissal of the action, holding as follows:
“Dr. Snyder opined, based on his contemporaneous and most recent examinations, as well as upon his review of the plaintiffs magnetic resonance imaging reports, which revealed, inter alia, disc herniations at L5-S1 and C5-6, and disc bulges at T5-6 and T6-7, that the plaintiffs lumbar and cervical injuries and observed range of motion limitations therein were permanent and causally related to the subject accident.” (62 AD3d at 983-984.)
The case at bar now presents the identical issue this court confronted in Sinfelt. Indeed, plaintiffs physician’s affirmation here is almost identical in form and substance to the chiropractor’s affidavit in Sinfelt, to the extent of even including the typographical error “chiropractic” in referring to the physician’s opinion.[2] Most telling, the subject physician’s affirmation again lacks an express opinion on degeneration or a reference to the opinion of the defendants’ radiologist and also contains opinions as to causation that are verbatim to those stated by the chiropractor in Sinfelt.
This court must conclude, from the Sinfelt decision, that a long-standing and oft-used principle of law in the Second. Department has been modified and that a plaintiff’s medical provider may now be found to “address” a finding of degeneration, sufficient to raise an issue of fact, without expressly com- *959 meriting on or acknowledging that the issue was raised by a defendant’s radiologist.
Therefore, notwithstanding the long line of cases on this issue ostensibly to the contrary, the court is constrained by this most recent decision in Sinfelt, on virtually identical factual circumstances, to find that Dr. Zelefsky’s affirmation raises an issue of fact concerning whether the disc pathologies in the plaintiff’s cervical spine are causally related to the May 19, 2006 motor vehicle accident.
Accordingly, since the defendants failed to establish prima facie that the plaintiffs claimed injuries to her cervical spine were not “serious” as a matter of law and based upon the existence of a triable issue as to the causal relation of those injuries, the defendants’ motion must be denied irrespective of the lack of viability of the plaintiffs claimed injuries to her right shoulder (see Sinfelt v Helm’s Bros., Inc., supra; Bebry v Farkas-Galindez, 276 AD2d 656 [2000]; O’Neill v O’Neill, 261 AD2d 459 [1999]).

. Although the plaintiff also submitted an affirmation from her radiologist, Richard J. Rizzuti, M.D., he only offered an opinion that an MRI of the plaintiffs cervical spine performed on August 5, 2006 revealed the existence of bulging discs at C3-4 and C4-5. Dr. Rizzuti proffered no conclusion as to the origin of those disc pathologies.

. It should be noted that the same law firm represented the plaintiff in Sinfelt and the plaintiff in the case at the bar.