# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**155**
**CA 15-01299**
PRESENT: WHALEN, P.J., CENTRA, LINDLEY, TROUTMAN, AND SCUDDER, JJ.

---

CURTIS COOK, PLAINTIFF-APPELLANT,

V                                                   MEMORANDUM AND ORDER

ALYSSA S. PETERSON AND THOMAS M. MIKE,
DEFENDANTS-RESPONDENTS.

---

LAW OFFICE OF JACOB P. WELCH, CORNING (ANNA CZARPLES OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

BARTH SULLIVAN BEHR, BUFFALO (DANIEL K. CARTWRIGHT OF COUNSEL), FOR
DEFENDANT-RESPONDENT ALYSSA S. PETERSON.

LAW OFFICE OF JOHN TROP, ROCHESTER (TIFFANY L. D'ANGELO OF COUNSEL),
FOR DEFENDANT-RESPONDENT THOMAS M. MIKE.

---

Appeal from an order of the Supreme Court, Steuben County (Peter
C. Bradstreet, A.J.), entered December 9, 2014.  The order granted
defendants' cross motions for summary judgment dismissing plaintiff's
complaint.

It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law, the cross motions are denied, the
complaint and cross claims are reinstated and the matter is remitted
to Supreme Court, Steuben County, for further proceedings on the
motion filed by defendant Thomas M. Mike.

Memorandum:  In June 2009, plaintiff was a passenger in a vehicle
operated by defendant Alyssa S. Peterson.  The vehicle was struck by a
vehicle operated by defendant Thomas M. Mike, who was proceeding
straight through an intersection when Peterson turned left in front of
him.  Plaintiff went directly to the hospital from the scene of the
accident, complaining of pain in his head, neck, lower back and right
shoulder.  In the two weeks following the accident, plaintiff treated
with an orthopedist for right shoulder pain and "occipital type
headaches."  The orthopedist diagnosed plaintiff with a "[c]ervical
strain sprain and occipital headaches- posttraumatic," "[b]ilateral
paracervical strains- post[]traumatic," and right shoulder tendonitis.
Plaintiff was prescribed various medications, and the orthopedist
"recommend[ed] postural improvements which [plaintiff could] do in a
self managed fashion and [the] specific exercise was
reviewed/demonstrated in the office" on July 8, 2009.  Plaintiff did
not see any physician again for complaints related to the accident
until September 2010, when he sought treatment for back pain.  It was

not until March 2011 that plaintiff presented to his primary care physician for complaints of debilitating headaches. From that point forward, plaintiff was diagnosed with occipital neuralgia, underwent numerous occipital nerve block injections and ultimately, in July 2013, underwent surgery to have a permanent occipital nerve stimulator implanted, resulting in five scars measuring 2.5 to 3 inches each along the line of plaintiff's spine.

Plaintiff commenced this action in April 2012, i.e., before the stimulator surgery, alleging that he had sustained serious physical injuries in the motor vehicle accident and that he had sustained an economic loss greater than the basic economic loss. In his initial bill of particulars, plaintiff alleged serious injuries under the categories of "permanent loss of use and/or permanent consequential limitations of use and/or significant limitation of use of his neck and hip," and he further alleged that he sustained a serious injury under the 90/180-day category (see generally Insurance Law § 5102 [d]).

On February 17, 2014, Mike moved for summary judgment dismissing the complaint and any cross claims against him on the ground that Peterson's negligence was the sole proximate cause of the accident. On May 19, 2014, Peterson cross-moved for summary judgment dismissing the complaint against her on the ground that plaintiff did not sustain a qualifying serious injury. On June 3, 2014, Mike cross-moved for summary judgment dismissing the complaint and cross claims based on plaintiff's failure to meet the serious injury threshold, joining in Peterson's cross motion and incorporating all of the arguments and exhibits she submitted in support of her cross motion.

By amended verified bills of particulars dated May 30, 2014, i.e., before Mike's cross motion for summary judgment, plaintiff claimed that he had sustained a serious injury under the significant disfigurement category. He based that new claim on the scars that resulted from his stimulator surgery. Plaintiff opposed the motion and cross motions, but in his opposing papers he expressly withdrew his claim under the permanent loss of use category of serious injury.

Supreme Court granted the cross motions, awarding defendants summary judgment dismissing the complaint, and implicitly the cross claims, on the ground that plaintiff did not sustain a serious injury. The court found that defendants met their initial burden of establishing that plaintiff did not sustain a serious injury and that, even though there were conflicting medical opinions on the issue of serious injury, the gaps in plaintiff's treatment interrupted the chain of causation. Based on its determination, the court found that there was no reason to rule on Mike's motion, in which he asserted that Peterson's negligence was the sole proximate cause of the accident. We now reverse.

With respect to the category of permanent consequential limitation of use, defendants met their initial burden on the cross motions by submitting, inter alia, the report of a medical expert concluding that the only injuries sustained by plaintiff in the

accident were "[c]ervical and lumbar sprain/strain[s]," which would have "resolve[d] in weeks to months, but not years after the accident."  We conclude, however, that plaintiff raised triable issues of fact by submitting the report of a medical expert who opined that plaintiff's occipital neuralgia was causally related to the accident and limited plaintiff "from being functional or basically doing anything."  Plaintiff's expert contended that the permanent stimulator required to alleviate the pain caused from the occipital neuralgia resulted in a permanent consequential limitation of use of plaintiff's musculoskeletal system and limited all of plaintiff's activities.  Those conflicting expert opinions create triable issues of fact requiring a trial (*see DeAngelis v Martens Farms, LLC*, 104 AD3d 1125, 1126; *Pagels v P.V.S. Chems.*, 266 AD2d 819, 819).  Indeed, "[i]t is well established that 'conflicting expert opinions may not be resolved on a motion for summary judgment' " (*Corbett v County of Onondaga*, 291 AD2d 886, 887).

Although Mike correctly contends that many of the medical reports and records submitted by plaintiff in opposition to the cross motions were unsworn and uncertified, we may consider those reports and records that were "submitted by defendants . . . or were referenced in the reports of physicians who examined plaintiff on their behalf, and [defendants] submitted the reports of [those physicians]" (*Feggins v Fagard*, 52 AD3d 1221, 1223; *see Siemucha v Garrison*, 111 AD3d 1398, 1399).  To the extent that plaintiff submitted unsworn and uncertified medical reports and records that were not submitted by defendants or relied upon by their expert, we may nevertheless rely on the medical opinions of plaintiff's experts because "the various medical opinions relying on those . . . reports [and records] are sworn and thus competent evidence" (*Brown v Dunlap*, 4 NY3d 566, 577 n 5; *see Harris v Carella*, 42 AD3d 915, 916).  We further agree with plaintiff that the court erred in discounting entirely the opinion of plaintiff's treating physician due to perceived errors in his report.  "The court may not weigh the credibility of the affiants on a motion for summary judgment unless it clearly appears that the issues are not genuine, but feigned" (*Glick & Dolleck v Tri-Pac Export Corp.*, 22 NY2d 439, 441).  In any event, regardless of the opinion of plaintiff's treating physician, plaintiff also submitted an expert affirmation from another medical professional that raises triable issues of fact.

We reject defendants' contention that the gaps in plaintiff's treatment are fatal to his claims (*see generally Pommells v Perez*, 4 NY3d 566, 574).  With respect to the 14-month gap in treatment following the July 2009 medical appointments, medical records submitted by defendants in support of their cross motions provided the unrebutted explanation that plaintiff's treating orthopedist had provided plaintiff with medication and an exercise regimen that was to be performed "in a self managed fashion."  In opposition to the cross motions, plaintiff contended that he experienced only mild relief from that course of treatment and, as a result, "sought a second opinion."  We thus conclude that plaintiff provided a reasonable explanation for the gap in treatment that is substantiated by the record, which is sufficient to defeat defendants' cross motions (*see Ramkumar v Grand Style Transp. Enters. Inc.*, 22 NY3d 905, 906; *Kellerson v Asis*, 81

AD3d 1437, 1438; *cf. Smyth v McDonald*, 101 AD3d 1789, 1790-1791; *Thompson v Abbasi*, 15 AD3d 95, 99). With respect to two other alleged gaps in treatment, we conclude that "the record fails to establish that plaintiff in fact ceased all therapeutic treatment" during those purported gaps inasmuch as plaintiff was still under the care of physicians who had provided nerve block injections, he had received referrals for other physicians and he was exploring alternative treatments to combat the pain caused by the occipital neuralgia (*Endres v Shelba D. Johnson Trucking, Inc.*, 60 AD3d 1481, 1483; *see Seecoomar v Ly*, 43 AD3d 900, 902).

With respect to the significant limitation of use category, we conclude that defendants failed to meet their initial burden with respect to that category (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353). Defendants' own submissions established that plaintiff sustained, at the very least, "[c]ervical and lumbar sprain[s]/strain[s]," which resulted in a "moderately limited" range of motion. "[A]ny assessment of the significance of a bodily limitation necessarily requires consideration not only of the extent or degree of the limitation, but of its duration as well" (*Downie v McDonough*, 117 AD3d 1401, 1403, *lv denied* 24 NY3d 906 [internal quotation marks omitted]; *see Vasquez v Almanzar*, 107 AD3d 538, 539-540). Here, defendants failed to establish as a matter of law that the limitations sustained by plaintiff from the cervical and lumbar sprains and strains were not significant (*see Clark v Aquino*, 113 AD3d 1076, 1077-1078; *Feggins*, 52 AD3d at 1223-1224; *Brown v Motor Veh. Acc. Indem. Corp.*, 33 AD3d 832, 832). In any event, as with the permanent consequential limitation of use category, we agree with plaintiff that he raised triable issues of fact whether the occipital neuralgia was caused by the accident and, if so, whether that injury caused a significant limitation of use of plaintiff's musculoskeletal system.

We further agree with plaintiff that defendants did not meet their burden of establishing that plaintiff did not sustain a serious injury under the 90/180-day category. Inasmuch as we have held that a " 'whiplash injury to [plaintiff's] cervical spine and [a] lumbosacral sprain/strain' " can constitute a qualifying injury under the 90/180-day category (*Bowen v Dunn*, 306 AD2d 929, 929; *see Zeigler v Ramadhan*, 5 AD3d 1080, 1081; *cf. Heatter v Dmowski*, 115 AD3d 1325, 1326), defendants were required to "establish as a matter of law that plaintiff was not curtailed from performing [his] usual activities to a great extent rather than some slight curtailment" during the relevant time period (*Winslow v Callaghan*, 306 AD2d 853, 854 [internal quotation marks omitted]). Defendants failed to do so (*see Crewe v Pisanova*, 124 AD3d 1264, 1265-1266; *Suazo v Brown*, 88 AD3d 602, 602; *Winslow*, 306 AD2d at 853-854), and thus the burden never shifted to plaintiff to raise an issue of fact (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324).

With respect to the final category of serious injury, i.e., significant disfigurement, Peterson contends that plaintiff improperly attempted to rely on that category of serious injury in opposing the

cross motions because it was first recited in the amended verified bills of particulars that postdated Peterson's cross motion. Peterson's contention is not properly before us inasmuch as it is raised for the first time on appeal and is an issue that "could have been obviated or cured by factual showings or legal countersteps in the trial court" (*Smith v Besanceney*, 61 AD3d 1336, 1336 [internal quotation marks omitted]).  In any event, even if we were to agree with Peterson that the significant disfigurement category of serious injury should not have been addressed by the motion court, that category of serious injury was properly asserted in the amended verified bills of particulars (*see* CPLR 3042 [b]), and thus would have "remained intact" following the decision on the previously asserted categories of serious injury (*O'Brien v Bainbridge*, 89 AD3d 1511, 1511-1512).

On the merits, to the extent that there is an issue of fact whether the occipital neuralgia was caused by the accident, there is likewise an issue of fact whether the scarring sustained by plaintiff as a result of the surgery necessitated by the occipital neuralgia was caused by the accident (*see Schader v Woyciesjes*, 55 AD3d 1292, 1293; *Chmiel v Figueroa*, 53 AD3d 1092, 1093; *see generally Baez v Rahamatali*, 6 NY3d 868, 869; *Kilmer v Strek*, 35 AD3d 1282, 1283).

Finally, we agree with plaintiff that the claim for economic loss in excess of basic economic loss should be reinstated.  We note that the court did not expressly address this claim in granting the cross motions for summary judgment dismissing the complaint on the ground that plaintiff did not sustain a serious injury, and it is well settled, however, that a plaintiff may recover for economic loss in excess of basic economic loss "without proof of serious injury" (*Colvin v Slawoniewski*, 15 AD3d 900, 900; *see Barnes v Kociszewski*, 4 AD3d 824, 825; *see generally Montgomery v Daniels*, 38 NY2d 41, 47-48). Here, "plaintiff[] made a sufficient showing that [he] sustained economic loss in excess of basic economic loss to warrant submission of the issue to the jury" (*Barnes*, 4 AD3d at 825).

Entered:  March 18, 2016                    Frances E. Cafarell
                                            Clerk of the Court