Tully v Kenmore-Tonawanda Union Free Sch. Dist. (2022 NY Slip Op 04496)

Tully v Kenmore-Tonawanda Union Free Sch. Dist.

2022 NY Slip Op 04496

Decided on July 8, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 8, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, PERADOTTO, AND WINSLOW, JJ.

513 CA 21-00794

[*1]STEPHANIE TULLY, PLAINTIFF-APPELLANT-RESPONDENT,
v
KENMORE-TONAWANDA UNION FREE SCHOOL DISTRICT, ANTHONY RAMUNNO, DEFENDANTS-RESPONDENTS-APPELLANTS, ET AL., DEFENDANT. 

GROSS SHUMAN, P.C., BUFFALO (SARAH P. RERA OF COUNSEL), FOR PLAINTIFF-APPELLANT-RESPONDENT.
HURWITZ & FINE, P.C., BUFFALO (BRIAN M. WEBB OF COUNSEL), FOR DEFENDANTS-RESPONDENTS-APPELLANTS. 

 Appeal and cross appeal from an order of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered April 28, 2021. The order denied in part and granted in part the motion for summary judgment of defendants Kenmore-Tonawanda Union Free School District and Anthony Ramunno. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting the motion in its entirety and dismissing the amended complaint against defendants Kenmore-Tonawanda Union Free School District and Anthony Ramunno, and as modified the order is affirmed without costs.
Memorandum: Plaintiff commenced this action seeking to recover damages for injuries she allegedly sustained while riding in a school bus operated by Kenmore-Tonawanda Union Free School District and Anthony Ramunno (defendants) and defendant Kenmore-Tonawanda Department of Transportation when the bus drove over a large bump in the road, thereby causing plaintiff to be lifted out of her seat and strike her head on a bar above the emergency exit door. Plaintiff appeals and defendants cross-appeal from an order that granted those parts of defendants' motion for summary judgment dismissing the amended complaint, as amplified by the bill of particulars, with respect to the significant disfigurement, permanent consequential limitation of use (PCLU), and 90/180-day categories of serious injury against them, and denied defendants' motion with respect to the significant limitation of use (SLU) category (see Insurance Law § 5102 [d]). We agree with defendants that Supreme Court erred in failing to grant the motion in its entirety, and we therefore modify the order accordingly.
We note at the outset that the court properly granted the motion with respect to the significant disfigurement category because plaintiff, in opposition to the motion, abandoned any claim under that category (see Endres v Shelba D. Johnson Trucking, Inc., 60 AD3d 1481, 1482 [4th Dept 2009]).
We reject plaintiff's contention on her appeal that the court erred in granting the motion with respect to the PCLU category. In order to satisfy the serious injury threshold under Insurance Law § 5102, a plaintiff must present "objective proof of . . . injury"; "subjective complaints alone are not sufficient" (Toure v Avis Rent A Car Sys., 98 NY2d 345, 350 [2002]; see Weaver v Town of Penfield, 68 AD3d 1782, 1784 [4th Dept 2009]). Thus, with respect to the PCLU category specifically, "a plaintiff must 'submit objective proof of a permanent injury' to establish a qualifying serious injury" (Gamblin v Nam, 200 AD3d 1610, 1613 [4th Dept 2021]). "[A] 'minor, mild or slight limitation of use [is] classified as insignificant within the meaning of the [*2][no-fault] statute' " (Gaddy v Eyler, 79 NY2d 955, 957 [1992]).
Here, we conclude that defendants met their initial burden with respect to the PCLU category by submitting, inter alia, plaintiff's medical records and the affirmed independent medical examination (IME) reports of a neurologist and a neuropsychologist, who each examined plaintiff on behalf of defendants and opined that there was no objective medical evidence of a serious injury (see Koneski v Seppala, 158 AD3d 1211, 1213 [4th Dept 2018]; Downie v McDonough, 117 AD3d 1401, 1402 [4th Dept 2014], lv denied 24 NY3d 906 [2014]). The IME neurologist concluded that there was no convincing evidence that plaintiff sustained a concussion because, among other things, all imaging studies of her brain, including multiple MRIs, had been normal and it could not be said within a reasonable degree of medical certainty that plaintiff exhibited symptoms that would lead to the conclusion that she sustained a concussion (cf. Snyder v Daw, 175 AD3d 1045, 1046 [4th Dept 2019]). Importantly, the IME neurologist noted that neuropsychological testing conducted five months after the bus incident by plaintiff's own clinical neuropsychologist revealed a "largely normal cognitive examination" of a patient with "average intellectual reasoning" and "cognitive functioning . . . within normal limits," and with none of the weaknesses on the exam representing "a clinically significant cognitive deficit." The IME neuropsychologist likewise concluded that, in the aggregate, his neuropsychological evaluation supported and expanded upon the conclusions of plaintiff's clinical neuropsychologist insofar as plaintiff did not have, nor would she be expected to have, any causally related cognitive deficits due to the incident and, instead, had significant affective disorder underlying her various subjective mental and physical complaints (see Flisch v Walters, 42 AD3d 682, 683 [3d Dept 2007]). Although plaintiff asserts that defendants' own submissions raise a triable issue of fact because the IME neurologist ostensibly diagnosed her with post-traumatic headaches and occipital neuralgia related to the incident, that assertion lacks merit inasmuch as the IME neurologist specified that such assessment was based upon plaintiff's subjective complaints only, which is insufficient to raise a triable issue of fact (see Beaton v Jones, 50 AD3d 1500, 1502 [4th Dept 2008]). Additionally, defendants' submissions demonstrated that any post-traumatic concussive symptoms experienced by plaintiff following the incident, such as headaches, had not "in any way incapacitated [her] or interfered with [her] ability to work or engage in activities at home" (Licari v Elliott, 57 NY2d 230, 239 [1982]; see McKeon v McLane Co., Inc., 145 AD3d 1459, 1461 [4th Dept 2016]; cf. Cook v Peterson, 137 AD3d 1594, 1595-1596 [4th Dept 2016]).
The burden thus shifted to plaintiff, who failed to submit objective proof of a permanent consequential injury (see McKeon, 145 AD3d at 1461). Contrary to plaintiff's contention, we conclude that the affirmation of her treating neurologist, which consists of a recitation of the treatment he provided to plaintiff based on her subjective reports of headaches and related symptoms followed by a conclusory opinion that plaintiff sustained significant and consequential limitations, "is insufficient to raise an issue of fact because it fails to address the absence of objective findings on the . . . MRI scans, [and] relies upon subjective complaints of . . . headaches" (Smith v Reeves, 96 AD3d 1550, 1552 [4th Dept 2012]; see Downie, 117 AD3d at 1403; Solarzano v Power Test Petro, Inc., 181 AD2d 631, 631 [1st Dept 1992], lv denied 80 NY2d 602 [1992]).
We also reject plaintiff's contention on her appeal that the court erred in granting the motion with respect to the 90/180-day category. To recover under that category, a person must sustain "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than [90] days during the [180] days immediately following the occurrence of the injury or impairment" (Insurance Law § 5102 [d]). Thus, "[t]o qualify as a serious injury under the 90/180[-day] category, there must be objective evidence of a medically determined injury or impairment of a non-permanent nature . . . as well as evidence that plaintiff's activities were curtailed to a great extent" (Baldauf v Gambino, 177 AD3d 1307, 1308 [4th Dept 2019] [internal quotation marks omitted]; see Licari, 57 NY2d at 236).
Here, even assuming, arguendo, that the cervical MRI performed three months after the incident showing, inter alia, a disc herniation/protrusion at C4-5 and small posterior disc bulges mildly effacing the thecal sac at C6-7 constituted objective evidence of a medically determined injury or impairment of a non-permanent nature, defendants nonetheless met their initial burden by establishing that plaintiff's activities were not curtailed to a great extent during the applicable [*3]period. Plaintiff went to work after the incident, did not seek medical treatment for a week, and thereafter did not miss any time from work or school during the six months following the incident (see Baldauf, 177 AD3d at 1308; Robinson v Polasky, 32 AD3d 1215, 1216 [4th Dept 2006]). The purported restrictions mentioned in defendants' moving papers and now relied upon by plaintiff on appeal do not raise a triable issue of fact regarding whether plaintiff was prevented from performing substantially all of her daily activities. While plaintiff testified that she had a slight lifting restriction at her job at a pizzeria following the incident, she acknowledged that she did not submit any medical documentation to her employer for any restriction at work and, in any event, plaintiff maintained her full work schedule, and her claimed restriction of no longer being able to lift sauce buckets and cheese bins constitutes, at most, "some slight curtailment" of her daily activities, which is insufficient to raise a triable issue under the 90/180-day category (Licari, 57 NY2d at 236; see LaBeef v Baitsell, 104 AD3d 1191, 1192 [4th Dept 2013]). Additionally, "[a]lthough there was evidence that [plaintiff] could not [or was told not to] participate in some activities, such as gym class[, bowling,] and [softball], that is insufficient to [raise a triable issue of fact whether] she 'was unable to perform substantially all of the material acts that constituted her usual and customary daily activities' " (Burns v McCabe, 17 AD3d 1111, 1111 [4th Dept 2005]; see Altieri v Liccardi, 163 AD3d 1254, 1256 [3d Dept 2018]; Macdelinne F. v Jimenez, 126 AD3d 549, 550 [1st Dept 2015]).
The burden thus shifted to plaintiff, and we conclude that she failed to meet that burden inasmuch as her treating neurologist's "conclusory recitation of statutory language was insufficient to raise a triable issue of fact" (Griffo v Colby, 118 AD3d 1421, 1422 [4th Dept 2014]).
Defendants contend on their cross appeal that the court erred in denying the motion, without explanation, insofar as it sought summary judgment dismissing the amended complaint with respect to the SLU category. We agree.
With respect to plaintiff's alleged head and cognitive injuries, defendants met their initial burden on the SLU category for the same reasons discussed above regarding the PCLU category (see e.g. Koneski, 158 AD3d at 1212-1213; Downie, 117 AD3d at 1402-1403). Defendants submitted, inter alia, plaintiff's medical records and the reports of the IME neurologist and IME neuropsychologist, who opined that there was no objective medical evidence of serious injury related to plaintiff's subjective complaints of headaches and cognitive dysfunction (see Koneski, 158 AD3d at 1213). In particular, the IME neurologist concluded that there was no convincing evidence that plaintiff sustained a concussion and noted that the examination of plaintiff's clinical neuropsychologist revealed normal cognitive function, while the IME neuropsychologist likewise concluded that plaintiff had no causally related cognitive deficits due to the incident (see Walk-Reinard v Smith, 197 AD3d 888, 889 [4th Dept 2021]; Latini v Barwell, 181 AD3d 1305, 1306 [4th Dept 2020]). Moreover, defendants' submissions established that, regardless, any post-incident limitations were insignificant within the meaning of the statute (see Licari, 57 NY2d at 236).
With respect to plaintiff's spinal complaints, defendants also met their initial burden. Specifically, defendants submitted the report of the IME neurologist who, after reviewing plaintiff's medical records and examining her, opined that plaintiff did not sustain any significant cervical injury as a result of the incident. The IME neurologist noted in particular that, during her early medical appointments following the incident, plaintiff made no complaints of neck pain and her examination one week after the incident showed no pain or abnormalities related to the neck or cervical spine. The IME neurologist also noted that plaintiff was frequently found to have a normal objective cervical exam. With respect to the cervical MRI showing, in relevant part, a disc herniation/protrusion at C4-5 and small posterior disc bulges mildly effacing the thecal sac at C6-7, the IME neurologist opined that such abnormalities could not be attributed within a reasonable degree of medical certainty to the incident (see Bleier v Mulvey, 126 AD3d 1323, 1324 [4th Dept 2015]). In addition, defendants also submitted plaintiff's testimony in which she testified that she went to work immediately after the incident and that she continued with her daily activities after the incident (see Heller v Jansma, 103 AD3d 1160, 1161 [4th Dept 2013]).
Inasmuch as defendants met their initial burden of showing that plaintiff did not sustain a serious injury under the SLU category as a result of the incident, the burden shifted to plaintiff to [*4]raise a triable issue of fact. Plaintiff failed to meet that burden. The affirmation of plaintiff's treating neurologist, "which merely repeats plaintiff['s] subjective complaints . . . and consists of conclusory assertions tailored to meet the statutory requirements[,] . . . is insufficient to establish serious injury" (Muratore v Tierney, 229 AD2d 1018, 1019 [4th Dept 1996] [internal quotation marks omitted]; see Gaddy, 79 NY2d at 958; Smith, 96 AD3d at 1552). Moreover, the records of plaintiff's orthopaedist, who began seeing plaintiff over four years after the incident, are likewise insufficient to raise a triable issue of fact. While the orthopaedist noted that plaintiff's cervical range of motion was limited in extension and rotation, "the records upon which plaintiff relies fail to 'recite the tests used to ascertain the degree of plaintiff's loss of range of motion' " (Paveljack v Cirino, 93 AD3d 1286, 1287 [4th Dept 2012]; see Weaver, 68 AD3d at 1785). Moreover, as defendants correctly contend, the orthopaedist did not offer any opinion as to the cause of plaintiff's cervical spine complaints, i.e., he did not relate any range of motion loss to the incident (see French v Symborski, 118 AD3d 1251, 1252 [4th Dept 2014], lv denied 24 NY3d 904 [2014]).
Entered: July 8, 2022
Ann Dillon Flynn
Clerk of the Court